OPINION
{¶ 1} Defendant, Anthony Jordan, appeals from his conviction and sentence for possession of crack cocaine and having weapons while under a disability. Those convictions were entered on Defendant's no contest pleas after the trial court overruled his motion to suppress evidence.
 {¶ 2} On June 23, 2004, at 4:00 p.m., Detective Woodruff, a member of the Springfield police drug unit, was patrolling the area of Fountain and Euclid Avenues when he observed a white Chevy Caprice with chrome rims that was proceeding East on Euclid Avenue. Springfield police had received information that week that a shooting suspect from Dayton had been driving a white Caprice with fancy rims.
 {¶ 3} Detective Woodruff followed the white Caprice. After it proceeded through the intersection of Euclid and Clifton Avenues, the white Caprice came to a stop twenty to thirty feet east of that intersection in the middle of the street, next to a white Buick Riviera that was parked at the curb. Detective Woodruff knew that the white Riviera belonged to Greg Howard, a person whom Woodruff knew was a drug user and seller.
 {¶ 4} Howard got out of his vehicle and into the front passenger seat of the white Caprice. The driver and passenger sat inside that vehicle for about thirty seconds. At that point Detective Woodruff decided to initiate a traffic stop of the white Caprice because it was illegally parked in the middle of the street, and because Woodruff believed he had witnessed drug activity. In Detective Woodruff's experience, which includes over five hundred drug investigations, drugs are often sold in this manner, when a vehicle stops in the street adjacent to a parked vehicle and a person in the parked vehicle gets out and briefly enters the other vehicle.
 {¶ 5} Detective Woodruff approached the driver's side of the white Caprice and found Defendant Jordan sitting in the driver's seat. Defendant initially avoided looking at Woodruff or otherwise acknowledging his presence. When the passenger, Greg Howard, saw that a police stop of Defendant's vehicle was underway, he exited Defendant's white Caprice and got back into his own vehicle.
 {¶ 6} Woodruff knocked on Defendant's window twice and Defendant rolled the window down. When Woodruff asked for Defendant's license, Defendant nervously looked around inside the vehicle. That caused Woodruff to be concerned about what Defendant was looking for. Woodruff observed a folded twenty dollar bill lying on the seat next to Defendant, which heightened Woodruff's suspicions that he had witnessed a drug transaction.
 {¶ 7} Woodruff knew from his police experience that weapons are often present where drug activity takes place. That caused Woodruff to become concerned for his safety, and he decided to order Defendant from the vehicle to conduct a pat-down search of Defendant for weapons.
 {¶ 8} Woodruff asked Defendant to place his hands on top of the vehicle. Defendant began to nervously look around, causing Woodruff concern that Defendant might try to run. Woodruff grabbed Defendant's belt and began the patdown.
 {¶ 9} Woodruff felt a large wad of cash in Defendant's left pant's pocket and in Defendant's right pants' pocket, Woodruff felt a baggie containing what he believed was marijuana. When Woodruff asked Defendant if the money and marijuana was all he had on him, Defendant replied "I forgot.
It's in there." At that point Woodruff removed $785.00 in cash and four baggies of marijuana from Defendant's pants pockets. The marijuana was packaged in a manner consistent with how it is sold on the street.
 {¶ 10} After arresting Defendant Detective Woodruff performed a more thorough search. Woodruff felt a hard, rock-type object in Defendant's crotch area. He suspected it was crack cocaine because of its feel and the fact that in his experience drug dealers often conceal crack in their underwear. Woodruff placed Defendant in the rear of his police cruiser and advised him of his Miranda rights.
 {¶ 11} Woodruff next searched the interior of Defendant's vehicle, which produced a set of scales in the glove box. When Woodruff asked Defendant if he had the keys to the trunk, Defendant replied, "They're on the key chain. There is nothing in there. Go ahead." Woodruff searched the trunk and discovered another set of scales and $9,000.00 in cash in a duffel bag.
 {¶ 12} Woodruff got Defendant out of the police cruiser and, after verifying that he still had the suspected crack cocaine in his crotch area, Woodruff told Defendant that if he had crack cocaine on him when they got to the jail he would get another charge for bringing that into the facility. Defendant then agreed to remove it and took a baggie of crack cocaine out of his pants.
 {¶ 13} Defendant's vehicle was towed to the City garage and kept in police custody. A few days after Defendant's arrest, his girlfriend called police and requested that she be allowed to retrieve certain items she had stored in Defendant's car, including clothing, a PlayStation, and a DVD player. Detective Frasco, who understood that Defendant had been contacted in the jail and authorized the return of those items to his girlfriend, went to the City garage and retrieved those items from the trunk of Defendant's car. In the process Detective Frasco discovered a gun in the trunk, which she seized.
 {¶ 14} Defendant was indicted on one count of possession of crack cocaine, over ten but less than twenty-five grams, in violation of R.C. 2925.11, one count of permitting drug abuse in violation of R.C. 2925.13, and one count of having weapons while under disability in violation of R.C. 2923.13. The indictment also contained specifications seeking forfeiture of Defendant's vehicle and the cash recovered by police. R.C. 2925.42.
 {¶ 15} Defendant filed a motion to suppress evidence, which the trial court overruled following a hearing. Defendant subsequently entered pleas of no contest and was found guilty of the cocaine possession and weapons under disability charges. He also agreed to forfeiture of his vehicle and the cash. The parties agreed to recommend concurrent sentences of six years on the cocaine possession charge and four years on the weapons under disability charge. In exchange, the State dismissed the permitting drug abuse charge and agreed to a suspension of the execution of sentence pending appeal. The trial court sentenced Defendant in accordance with the parties' agreement.
 {¶ 16} Defendant timely appealed to this court from his conviction and sentence, challenging the trial court's order overruling his motion to suppress evidence.
 FIRST ASSIGNMENT OF ERROR {¶ 17} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY OVERRULING APPELLANT'S MOTION TO SUPPRESS, THEREBY VIOLATING THE APPELLANT'S RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION."
 {¶ 18} Defendant first argues that police lacked the reasonable suspicion of criminal activity necessary to justify briefly stopping and detaining him for investigation. We disagree.
 {¶ 19} Defendant committed a traffic violation when he stopped and illegally parked his vehicle alongside another vehicle parked at the curb of a street. R.C. 4511.68(A)(12). That was sufficient probable cause to allow Detective Woodruff to stop and detain Defendant in order to issue a traffic citation. Whrenv. United States (1996), 517 U.S. 806, 116 S.Ct. 1769,135 L.Ed.2d 89; Dayton v. Erickson, 76 Ohio St.3d 3, 1996-Ohio-431. To the extent that the stop also presented reasonable and articulable suspicion of other criminal activity, Woodruff was authorized to continue Defendant's detention in order to investigate his suspicions. Id.
 {¶ 20} Law enforcement officers may briefly stop and detain an individual for investigation if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. That is something more than an unparticularized suspicion or mere hunch, but less than the level of suspicion required for probable cause. Terry v. Ohio (1968), 392 U.S. 1,88 S.Ct. 1868, 120 L.Ed.2d 889; State v. White (Jan. 18, 2002), Montgomery App. No. 18731. To satisfy that standard, police must be able to point to specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the intrusion. Terry; State v. White.
 {¶ 21} The propriety of an investigative stop or detention must be viewed in light of the totality of the surrounding facts and circumstances. State v. Bobo (1988), 37 Ohio St.3d 177. These circumstances must be viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold. State v. Andrews (1991),57 Ohio St.3d 86. Accordingly, the court must take into consideration the officer's training and experience and understand how the situation would be viewed by the officer on the street. Id.
 {¶ 22} Unprovoked flight upon seeing police officers is a relevant consideration in determining whether the totality of the facts and circumstances are sufficiently suspicious to justify aTerry stop. Illinois v. Wardlow (2000), 528 U.S. 119,120 S.Ct. 673, 145 L.Ed.2d 570. While such a factor is not necessarily indicative of criminal behavior, and can be consistent with innocent conduct, Terry recognized that officers may briefly detain individuals to resolve ambiguity in their conduct. Id.
 {¶ 23} Detective Woodruff testified that he was familiar with Greg Howard, the man who got into the front passenger seat of Defendant's vehicle, and knew that Howard was a drug user and seller. Woodruff further testified that approximately two weeks prior to this incident he had observed Howard leaving a residence where a confidential police informant made a controlled buy of drugs. Woodruff also testified that in his experience investigating drug activity the conduct he observed in this case, a vehicle stopping in the middle of the street adjacent to a parked car and a person in that parked car briefly entering the stopped vehicle, is consistent with drug activity and how drug sales are made.
 {¶ 24} While the facts in this case present a close question, we conclude that the totality of the facts and circumstances, when viewed through the eyes of Detective Woodruff, taking into consideration his training and experience, gave rise to sufficient reasonable suspicion of drug activity to justify a brief investigatory stop and detention of Defendant. Although Defendant argues that the conduct in this case was consistent with innocent behavior, these events, when considered in their totality and viewed the way Detective Woodruff would understand them, given his training and experience, reasonably warranted further investigation. Terry recognized that officers may briefly detain individuals in order to resolve ambiguity in their conduct. Wardlow, supra.
 {¶ 25} Defendant next argues that even if a Terry
investigative detention stop was justified, Detective Woodruff lacked sufficient reasonable suspicion that Defendant was armed and dangerous to justify a patdown search for weapons. Again, we disagree.
 {¶ 26} Even when an investigatory stop and detention of a suspect is justified, it does not necessarily follow that a frisk for weapons is also warranted. State v. Lynch (June 6, 1988), Montgomery App. No. 17028; State v. Mickey (June 29, 1990), Montgomery App. No. 11582. A patdown search for weapons requires reasonable grounds to believe that the suspect is armed and dangerous. Terry; State v. Andrews (1991), 57 Ohio St.3d 86,89. The officer need not be absolutely certain that the individual is armed. Rather, the issue is whether a reasonably prudent person in those circumstances would be warranted in the belief that his safety or the safety of others was in danger.Terry.
 {¶ 27} Ohio courts, including this one, have long recognized that persons engaged in illegal drug activity are often armed with a weapon. State v. Evans, 67 Ohio St.3d, 413,1993-Ohio-186; State v. Taylor (1992), 82 Ohio App.3d 434;State v. Lindsey (June 23, 2000), Montgomery App. No. 18073. If, as we have already concluded, Detective Woodruff had a reasonable suspicion that Defendant was involved in illegal drug activity, he likewise had a legitimate concern that Defendant might be armed and posed a danger to him, because reasonable suspicion of drug activity, alone, may justify a patdown frisk for weapons. State v. Thomas (June 17, 2005), Montgomery App. No. 20643, 2005-Ohio-3064; State v. Heard (Feb. 28, 2003), Montgomery App. No. 19322, 2003-Ohio-906; Lindsey; Evans.
 {¶ 28} On this point Detective Woodruff's own experience is illustrative. He testified that he is well aware from his experience that concealed weapons are often present where drug activity takes place. When Woodruff initiated this stop and Greg Howard realized that police were approaching, he quickly exited Defendant's car and got back into his own car, which further heightens suspicions about the activity that was occurring and the potential danger to Woodruff.
 {¶ 29} The totality of these facts and circumstances, when viewed through the eyes of Detective Woodruff on the scene, is sufficient to give rise to a reasonable fear that Defendant might be armed, justifying the slight inconvenience and minimal intrusion that a patdown frisk for weapons entails.
 {¶ 30} During the patdown frisk for weapons Detective Woodruff felt what he recognized to be a large wad of currency in Defendant's left pants pocket and a baggie with marijuana in Defendant's right pants pocket. Detective Woodruff asked Defendant if all he had was the money and marijuana and Defendant admitted that he had those items in his pants pockets. At that point Detective Woodruff had probable cause to perform a warrantless search of Defendant's person for contraband. He removed from Defendant's pants pockets $785 in cash and a baggie with four separate bags of marijuana prepackaged for sale.
 {¶ 31} Detective Woodruff placed Defendant under arrest for possession of the marijuana, and then incident to that arrest Woodruff conducted a more thorough search of Defendant's person, which revealed a baggie of crack cocaine in the crotch area of Defendant's pants. Such searches incident to a valid arrest are an exception to the warrant requirement. Chimel v. California
(1969), 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685; UnitedStates v. Robinson (1973), 414 U.S. 218, 94 S.Ct. 467,38 L.Ed.2d 427; United States v. Edwards (1974), 415 U.S. 800,94 S.Ct. 1234, 39 L.Ed.2d 771.
 {¶ 32} After Woodruff placed Defendant in the rear of his police cruiser and advised him of his Miranda rights, Woodruff searched the interior of Defendant's vehicle, also incident to his arrest. New York v. Belton (1981), 453 U.S. 454,101 S.Ct. 2860, 69 L.Ed.2d 768. Woodruff discovered a set of scales in the glove box. Woodruff then asked Defendant if he had the keys to the trunk. Defendant replied: "They're on the key chain. There is nothing in there. Go ahead." Thus, Defendant voluntarily consented to the search of the trunk. Schneckloth v. Bustamonte
(1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854.
 {¶ 33} Defendant challenges the validity of the search of the trunk of his car, arguing that his consent was not valid because he was illegally detained at that time. Contrary to Defendant's assertion, we have already concluded that Defendant was validly stopped, frisked, and arrested for possession of marijuana. Thus, Defendant's consent to search the trunk of his vehicle was freely and voluntarily given and constitutionally valid. That search disclosed a second set of scales and $9,000.00 in cash in a duffel bag.
 {¶ 34} Defendant was transported to jail and his vehicle was impounded and towed to the city impound lot. A few days after Defendant's arrest, Defendant's girlfriend called police and requested that certain items she had in Defendant's vehicle, clothing, a PlayStation and a DVD player, be returned to her. It was Detective Frasco's understanding that her Sergeant had called over to the jail and cleared this request for the release of these items by obtaining Defendant's authorization. Detective Frasco's Sergeant authorized Frasco to retrieve the requested items from Defendant's vehicle, which Frasco did. While Detective Frasco was retrieving these items from the trunk for Defendant's girlfriend, Frasco discovered a handgun which she seized.
 {¶ 35} Defendant challenges this search and seizure, arguing that it was not authorized by warrant or any recognized exception to the warrant requirement. We disagree. The evidence presented via Detective Frasco's testimony is sufficient to constitute a prima facie showing that Defendant consented to this search. It was Defendant's burden to rebut that prima facie evidence, which he did not do. Accordingly, this evidence of Defendant's consent to the search is sufficient absent proof from which the trial court might find otherwise. Defendant's Fourth Amendment rights were not violated, and the trial court did not err in overruling his motion to suppress evidence.
 {¶ 36} The assignment of error is overruled. The judgment of the trial court will be affirmed.
Brogan, J. And Fain, J., concur.