OPINION
{¶ 1} Defendant-appellant Joseph Pattson appeals his conviction and sentence for possession of cocaine. On July 22, 2005, Pattson was indicted on one count of possession of cocaine in violation of R.C. § 2925.11(A), and one count of possession of criminal tools in violation of R.C. § 2923.24(A). Pattson filed a motion to suppress evidence obtained through illegal search and seizure on August 11, 2005. A hearing on said motion was held on September 7, 2005. A day later, on September 8, 2005, the trial court issued an order overruling Pattson's motion to suppress.
 {¶ 2} Pattson entered a plea of no contest to the possession of cocaine charge on September 22, 2005, and the second charge for possession of criminal tools was dismissed. The trial court sentenced Pattson to a mandatory term of one year in prison. Pattson filed a timely notice of appeal on November 4, 2005.
 I {¶ 3} The incident that forms the basis for Pattson's conviction and sentence occurred on June 27, 2005. On that day, Dayton Police Narcotics Detective David House witnessed a confidential informant place a phone call to a suspected drug dealer in order to arrange the purchase of a substantial amount of crack cocaine at a Marathon Gas Station at 1845 North Main Street in Dayton, Ohio. The drug purchase was to occur immediately.
 {¶ 4} Approximately ten to fifteen minutes later, Detective House as well as several other Dayton Police Officers and Detectives observed the suspected drug dealer drive up to the gas station. The suspect arrived at the station in a burnt orange Chevy Caprice. In the vehicle were two passengers, one of whom was later identified as the defendant-appellant, Pattson.
 {¶ 5} When the suspect stopped the vehicle in front of a pump at the gas station, police officers positioned their unmarked police cars so that the suspect could not pull off. Upon approaching the vehicle, Detective House observed the suspect drop a bag of what appeared to be a large quantity of crack cocaine on the floorboard behind the driver's seat. The officers then removed every one from the vehicle. Detective House asked Pattson, who was sitting in the right rear passenger side to step outside of the vehicle.
 {¶ 6} After he removed him from the vehicle, Detective House handcuffed Pattson and conducted a pat-down search for weapons. Detective House did not discover any weapons, but he did find a quantity of crack cocaine as well as $173.00 and a digital scale with crack residue on it in Pattson's pockets. After Detective House read Pattson his Miranda rights, Pattson admitted that the crack, money, and scales were his. He further stated that he did not use drugs but merely sold them.
 {¶ 7} From his conviction and sentence, Pattson appeals.
 II {¶ 8} Because Pattson's first and second assignments of error are interrelated, they will be discussed together:
 {¶ 9} "DURING A FRISK FOR WEAPONS AN OFFICER MAY NOT SQUEEZE, SLIDE OR MANIPULATE AN OBJECT IN ANY WAY IN ORDER TO DETERMINE ITS NATURE AS CONTRABAND."
 {¶ 10} "THE RESULTS OF A FRISK FOR WEAPONS ABSENT A REASONABLE FEAR FOR OFFICER SAFETY MUST BE SUPPRESSED."
 {¶ 11} In his first and second assignments of error, Pattson contends that the trial court erred when it overruled his motion to suppress. Specifically, Pattson argues that because the illegal nature of the contraband in his pockets was not immediately apparent to Detective House, the contents of his pockets should have been suppressed. Lastly, Pattson asserts that once Detective House removed him from the vehicle and handcuffed him, there was no need to pat him down to search for weapons because he posed no threat to the safety of the officers. He asserts the pat down was unreasonable. We disagree. In regards to a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v. Hopfer
(1996), 112 Ohio App.3d 521, 548, 679 N.E.2d 321, quoting Statev. Venham (1994), 96 Ohio App.3d 649, 653, 645 N.E.2d 831. The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. State v. Isaac (July 15, 2005), Montgomery App. No. 20662, 2005-Ohio-3733, citing State v. Retherford (1994),93 Ohio App.3d 586, 639 N.E.2d 498. Accepting those facts as true, the appellate court must then determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. Id.
 {¶ 12} Initially, we find no merit to Pattson's argument that the decision of Detective House to pat him down for weapons after he was removed from the vehicle and handcuffed was unlawful. Pattson does not dispute that his removal from the vehicle and brief detention by Detective House was lawful. We recently stated in State v. Jordan (April 7, 2006), Clark App. No. 05CA0004,2006-Ohio-1813, that "law enforcement officers may briefly stop and detain an individual for investigation if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. * * * The propriety of an investigative stop or detention must be viewed in light of the totality of the surrounding facts and circumstances. State v. Bobo (1988), 37 Ohio St. 3d 177,524 N.E.2d 489. These circumstances must be viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold. State v. Andrews (1991),57 Ohio St.3d 86, 565 N.E.2d 1271. Accordingly, the court must take into consideration the officer's training and experience and understand how the situation would be viewed by an officer on the street. Id."
 {¶ 13} Even when an investigatory stop and detention of a suspect is justified, as is the case here, it does not necessarily follow that a frisk for weapons is also warranted.Jordan, supra, citing State v. Lynch (June 6, 1988), Montgomery App. No. 17028; State v. Mickey (June 29, 1990), Montgomery App. No. 11582. The officer need not be absolutely certain that the individual is armed. Jordan, supra. Instead, the issue is whether a reasonably prudent person in those circumstances would be warranted in the belief that his safety or the safety of others was in jeopardy. Terry v. Ohio (1968),392 U.S. 1, 88 S.Ct. 1868.
 {¶ 14} We have long recognized that persons engaged in illegal drug activity are often armed with a weapon. Jordan,
supra, citing State v. Evans (1993), 67 Ohio St. 3d 405, 413,618 N.E.2d 162; State v. Lindsey (June 23, 2000), Montgomery App. No. 18073. Clearly, Detective House possessed a reasonable suspicion that Pattson was involved in illegal drug activity. Moreover, he likewise had a reasonable suspicion that Pattson might be armed and thus, pose a danger to him, because reasonable suspicion of drug activity alone, may justify a pat-down frisk for weapons. Jordan, supra, citing State v. Thomas (June 17, 2005), Montgomery App. No. 20643, 2005-Ohio-3064.
 {¶ 15} Detective House testified that he had served on the Dayton Police Force for almost fourteen years. He also testified that he had spent the last seven years working for the narcotics unit of the police force. With respect to his decision to perform a pat-down frisk of Pattson, Detective House testified in pertinent part:
 {¶ 16} "Q: Okay. Now, in a drug situation like this where, you know, they're delivering a large amount of drugs, what are your concerns as you approach the car?
 {¶ 17} "A: Well, our obvious concern is, in fact with drug dealers, that there's a very [sic] likelihood that they might be armed. And then we get in a situation where we have multiple individuals inside the car during a drug transaction, again that even increases my fear that one of the individuals may be armed."
 {¶ 18} Detective House later testified in pertinent part:
 {¶ 19} "A: At that point in time based on the fact that I had already seen the crack cocaine in the back seat, and as I stated earlier the possibility of these individuals and probability of these individuals maybe having weapons in the vehicle, I secured Mr. Pattson in handcuffs and then I patted him down for safety."
 {¶ 20} In light of the testimony given by Detective House, the totality of facts and circumstances is clearly sufficient to give rise to a reasonable suspicion that Pattson may be armed, thereby justifying the slight inconvenience and minimal intrusion that a pat-down frisk for weapons necessarily requires.
 {¶ 21} Finally, Pattson contends that because Detective House manipulated the crack cocaine recovered from his pants pocket, said contraband should have been suppressed because the pat-down frisk for weapons went well beyond the scope authorized byTerry, supra, and Minnesota v. Dickerson (1993),508 U.S. 366, 113 S.Ct. 2130.
 {¶ 22} In Dickerson, supra, the issue presented to the Supreme Court of the United States was whether police officers may seize contraband other than weapons detected during a protective pat-down search of the type authorized by Terry,
supra. The Court stated the following:
 {¶ 23} "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context."
 {¶ 24} However, the officer is not permitted to manipulate or squeeze the object in order to ascertain its incriminating character. Dickerson, supra.
 {¶ 25} With respect to his discovery of the crack cocaine in Pattson's pocket, Detective House testified as follows on direct:
 {¶ 26} "A. When I patted his right front short pocket, I felt what I immediately recognized to be a plastic baggie containing a substantial quantity of crack cocaine.
 {¶ 27} "Q. Well, when you felt it it was a plastic baggie, and you didn't know it was crack. What did it feel like?
 {¶ 28} "A. It felt to me like crack cocaine.
 {¶ 29} "Q. Okay. And how do you know that?
 {¶ 30} "A. I have recovered crack cocaine on well over a thousand occasions in my career during patdowns, and from numerous previous arrests."
 {¶ 31} On cross, Detective House testified as follows:
 {¶ 32} "Q. And the reason why you went into the pocket was what?
 {¶ 33} "A. Because I felt what I recognized to be crack cocaine and I went in the pocket to recover that contraband."
 {¶ 34} Finally, while responding as follows to the court's followup questions, Detective House provided a demonstration to the court of the patdown:
 {¶ 35} "A: I first checked the waistband area pushing against the waistband. I then went down to his right short pocket and I pressed the pocket against his leg in simply — in sort of a, I guess you would call it a kneading motion, just grabbing and kind of squeezing the material against his leg, pressing against his thigh. When I did that I could feel the crack cocaine in that right front short pocket.
 {¶ 36} "Q (The Court): Did you in any way have to manipulate the object once you felt it?
 {¶ 37} "A: No, sir, I did not. When I felt the object I knew immediately that it was crack cocaine."
 {¶ 38} Once he realized that what he felt in Pattson's pocket was contraband, he immediately stopped the pat-down and reached into his pocket and removed a baggie containing what was later determined to be approximately 5.4 grams of crack cocaine. Unlike the officer in State v. Williams (September 3, 2004), Montgomery App. 20255, 2004-Ohio-4695, who testified that he had to further manipulate the object in the defendant's pocket after initially feeling it in order to determine what it was, Detective House stated that upon feeling the object in Pattson's pocket, it was immediately apparent to him that it was crack cocaine. Detective House testified that the object was larger than a quarter but smaller than one-half of a golf ball. Additionally, upon feeling the object in Pattson's pocket, he could feel individual pieces of crack cocaine as well as the knot in the baggie which held the contraband. Based on his experience in this specific situation, Detective House was able to clearly recognize the nature of the object in Pattson's pocket.
 {¶ 39} We stated in Williams, supra, that whether an officer in fact immediately recognizes an object for what it is when he first feels it can be determined with reference to its size, its location on the suspect's person, and the officer's subsequent actions. In the instant case, it is clear that the trial court's decision finding that Detective House properly seized the crack cocaine from Pattson's pocket is supported by competent and credible evidence.
 {¶ 40} Pattson's first and second assignments of error are overruled.
 III {¶ 41} Both of Pattson's assignments of error having been overruled, the judgment of the trial court is affirmed.
 . . . . . . . . . .
Brogan, J. and Wolff, J., concur.