OPINION
{¶ 1} Defendant, Albert G. Williams, appeals from hisconviction and sentence for possessing crack cocaine in violationof R.C. 2925.11(A), which were entered following Williams' pleaof no contest after the trial court had denied his Crim.R.12(C)(3) motion to suppress evidence. Williams filed a timelynotice of appeal.
 ASSIGNMENT OF ERROR {¶ 2} "The trial court erred in overruling Defendant's motionto suppress the evidence obtained by the police illegallysearching him."
 {¶ 3} When considering a motion to suppress, the trial courtassumes the role of the trier of facts and, as such, is in thebest position to resolve conflicts in the evidence and determinethe credibility of the witnesses and the weight to be given totheir testimony. State v. Retherford (1994),93 Ohio App.3d 586. The court of appeals must accept thetrial court's findings of fact if they are supported by competent,credible evidence in the record. Id. Accepting thosefacts as true, the appellate court must then independently determine, asa matter of law and without deference to the trial court's legalconclusion, whether the applicable legal standard is satisfied.Id.
 {¶ 4} The record indicates, and the trial court found, thatWilliams was lawfully detained by Dayton Police Departmentofficers pursuant to Terry v. Ohio (1968), 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889, on suspicion of drug trafficking. Williamsdoes not contest that finding. Neither does he contest the trialcourt's further finding that the officers were authorized underthe particular circumstances by Terry to perform a weaponspat-down. Williams does contest the trial court's finding thatseizure from his pants pocket of crack cocaine discovered therein the course of the weapons frisk was lawful under the "plainfeel" rule of Minnesota v. Dickerson (1993), 508 U.S. 366,113 S.Ct. 2130, 124 L.Ed.2d 334.
 {¶ 5} The weapons pat-down authorized by Terry "must, likeany other search, be strictly circumscribed by the exigencieswhich justify its initiation . . . Thus it must be limited tothat which is necessary for the discovery of weapons which mightbe used to harm the officer or others nearby . . ." Id., at p.25. If during the course of a Terry pat down frisk for weaponsa police officer feels an object whose contour or mass makes itsidentity as illegal contraband immediately apparent, the officermay seize the items. Minnesota v. Dickerson, supra; State v.Groves (Feb. 13, 2004), Montgomery App. No. 19951,2004-Ohio-662. However, the officer is not permitted tomanipulate or squeeze the object in order to ascertain itsincriminating character. Dickerson, supra; State v. Evans,67 Ohio St.3d 405-414, 1993-Ohio-186; State v. Heard (Mar. 7,2003), Montgomery App. No. 19322, 2003-Ohio-1047.
 {¶ 6} Dayton Police Officer Edmond Trick testified that he wasconducting a surveillance of the Unicorn Bar in Dayton and sawDefendant Williams engaged in conduct outside that location whichhe suspected was drug trafficking. After two other officersresponded to his call for assistance, they and Officer Trickapproached Defendant Williams, who had gone inside the UnicornBar. Officer Williams testified:
 {¶ 7} "We approached Mr. Williams, asked him if he could stepoutside. We needed to speak with him briefly. He responded yesand he was willing to walk outside with us.
 {¶ 8} "Q. Okay. Did you put any hands on him at that time?
 {¶ 9} "A. Uh, no, I believe not. We just asked him to stepoutside the bar.
 {¶ 10} "Q. Once outside, what if anything did you say or do?
 {¶ 11} "A. I advised Mr. Williams that I received informationor we believed that he was outside making drug transactions. Wewere going to conduct a pat down search of his outer clothing tocheck for any type of contraband
 {¶ 12} "Q. The purpose of your search was to check forcontraband?
 {¶ 13} "A. And/or weapons because drugs and weapons normallygo together —
 {¶ 14} "Q. Okay.
 {¶ 15} "A. — with one another.
 {¶ 16} "Q. I know you say that kind of casually. Is that basedupon your experience?
 {¶ 17} "A. Yes." (T. 12-13).
 {¶ 18} Officer Trick also testified that he'd madeapproximately fifty drug arrests in his thirteen years experienceas a police officer, and that about half that number had weaponson their person when arrested, including knives and razor blades.One had a gun. He also testified that police have recoveredhandguns in the area of the Unicorn Bar. (T. 13).
 {¶ 19} Officer Trick described the weapons pat-down heperformed, beginning at the area of Defendant's neck and upperbody and continuing downward. He made the following responses tothe prosecutor's questions:
 {¶ 20} "Q. Okay. And you're gesturing with a flat hand Do youhave like an open palm as you're moving down the body?
 {¶ 21} "A. Yes.
 {¶ 22} "Q. Okay. And is that the procedure you followed withthe defendant in this case?
 {¶ 23} "A. Yes.
 {¶ 24} "Q. Okay. What if anything did you find while you werepatting him down?
 {¶ 25} "A. As I was patting down his outer clothing, Ieventually got to his right front pants pocket. Patted that down.Inside the pants through his outer clothing I could feel thatthere was objects in there or an object that was about thediameter of a quarter. It was small, hard, kind of bumpy littlebit.
 {¶ 26} "Q. And based upon your feel of that object, was itapparent to you what it was at that time?[1]
 {¶ 27} "A. Yes, it was.
 {¶ 28} "Q. And what did you believe it to be?
 {¶ 29} "A. Crack cocaine.
 {¶ 30} "Q. Okay. Did you continue the rest of your patdown?
 {¶ 31} "A. At that point in time, and I don't believe I askedMr. Williams what was in there. I think at that point in time Iwent in to retrieve what I felt was crack cocaine.
 {¶ 32} "Q. Okay. Once you had retrieved that, upon visualinspection what did you find it to be?
 {¶ 33} "A. It was definitely crack cocaine." (T. 14-15).
 {¶ 34} On cross-examination, however, Officer Trick gave thefollowing testimony:
 {¶ 35} "Q. And you said the patdown that you conducted was tofeel for contraband or weapons, correct?
 {¶ 36} "A. Yes.
 {¶ 37} "Q. And in your patdown, you indicated that you didfeel what you believed to be crack?
 {¶ 38} "A. Yes.
 {¶ 39} "Q. That was in his front right pants pocket?
 {¶ 40} "A. Yes.
 {¶ 41} "Q. What type of pants was he wearing?
 {¶ 42} "A. He had on shorts. They were blue. I believe theywere blue jeans.
 {¶ 43} "Q. Was this lump that you felt in a watchpocket or inthe main pocket of the jeans?
 {¶ 44} "A. It would've been in the watch pocket. He did have alittle pocket that was — right front pocket.
 {¶ 45} "Q. And was it in a baggy, did you say?
 {¶ 46} "Q. Did you feel the baggy through the pants?
 {¶ 47} "A. No. I couldn't tell the baggy, but I could feel theobject that was in it.
 {¶ 48} "Q. When you were feeling the object, did you squeezeit or manipulate it in any way?
 {¶ 49} "A. Yes. I would touch it a little bit just to feel ita little bit more or determine —
 {¶ 50} "Q. With your fingertips?
 {¶ 51} "A. Yeah.
 {¶ 52} "Q. Did you squeeze it?
 {¶ 53} "A. I wouldn't say I squeezed it. But yes, I do kind offeel around it a little bit with my fingertips to try todetermine what it was.
 {¶ 54} "That was — I guess I should make myself clear. Thatwas after I patted it down with the palm of my hand first.
 {¶ 55} "Q. And based on those feeling, you went in andretrieved what you believed to be crack?
 {¶ 56} "A. Yes.
 {¶ 57} "Q. And you arrested Mr. Williams for crack at thattime?
 {¶ 58} "A. Yes." (T. pp. 24-25).
 {¶ 59} If, as the prosecutor's question to Officer Tricksuggested, it was apparent to him when he felt the object in thewatch pocket of Defendant's pants with the palm of his hand thatit was crack cocaine, then he was authorized under the rule ofMinnesota v. Dickerson to reach inside the pocket and seize it.However, if the officer first had to manipulate the object withhis fingertips to try to determine what it was, then the seizureis illegal. Id. The trial court made the following finding inthat regard:
 {¶ 60} "Upon patting down the Defendant, he felt an objectthat was readily apparent to him, by its feel, to be crackcocaine. An officer is permitted to retrieve contrabanddiscovered during the course of a pat down for weapons when theidentity of the item is apparent to the officer by its feelalone. See Minnesota v. Dickerson (1993), 508 U.S. 366 andState v. Heard (2003) Second District Court of Appeals,Montgomery County, case no. 19322. The officer testified thatupon feeling the object with the palm of his hand, it wasapparent that it was crack cocaine. The discovery of the crackcocaine was not caused by the officer manipulating or squeezingthe object in the Defendant's pocket. The `feeling around alittle bit with (his) fingertips' was not used to discover theitem since it was apparent to the officer, but to confirm thatthe item was crack cocaine." (October 21, 2003, Decision andEntry at p. 3.)
 {¶ 61} We are, as we said, bound by the trial court's findingsof fact if they are supported by competent, credible evidence.State v. Retherford. That includes the trial court's resolutionof conflicts in the evidence. However, the fact that there may besome conflict in the evidence will not prevent reversal if thetrial court's judgment is as a matter of law against the weightof the evidence, so that the court's conclusion is plainly theresult of mistake or misapprehension. See 5 Ohio Jurisprudence3d, Appellate Review, Section 510.
 {¶ 62} Officer Trick testified that he told Defendant Williamsthat he would pat down Defendant's "outer clothing to check forcontraband" (T. 13). He promptly corrected himself when asked bythe prosecutor, saying that the purpose of the search was"[a]nd/or weapons, because drugs and weapons normally gotogether." (T. 13). However, though the addition of weaponsreflects a valid purpose, his statement does not disclaim thathis parallel and continuing purpose was to search forcontraband
 {¶ 63} Officer Trick testified that he first believed thearticle was crack cocaine when he felt it with the palm of hisopen hand, inside the watch pocket of the pants Defendant wore.Why that was is not explained. However, the officer said that hissense of touch revealed to him that the object was "about thediameter of a quarter. It was small, hard, kind of bumpy a littlebit." (T. 12).
 {¶ 64} Officer Trick conceded on cross-examination that beforehe reached inside Defendant's pocket to seize the article he felthe felt it "a bit more . . . with my fingertips to try todetermine what it was." (T. 25). If the incriminating nature ofthe object was immediately apparent to him when he felt it withhis open hand, the resulting probable cause isn't necessarilyundermined because the officer manipulates it to confirm hisunderstanding. However, it is counterintuitive that an officerwould do that if its incriminating nature was immediatelyapparent when he first felt the object. More importantly, theofficer's stated purpose in manipulating the object, to determinewhat it was, creates a strong inference that he was unsure of itsidentity when he first felt it, not that he was acting to confirma firmly-held belief.
 {¶ 65} Independent judicial review requires a court to act onmore than an officer's conclusory assertions. There must beobjective confirmation of some kind. When dealing with a "plainview" seizure, whether the incriminating nature of an objectseized was immediately apparent to the officer when he saw it issusceptible to resolution upon objective criteria: its actualappearance, location, and lack of concealment. Those factors areless available for use when the "plain feel" test is involved, ifonly because the object necessarily is concealed. However,whether the officer in fact immediately recognized the object forwhat it was when he first felt it can be determined withreference to its size, its location on the suspect's person, andthe officer's subsequent actions.
 {¶ 66} Applying those criteria, we conclude that the trialcourt misapprehended the evidence when it found that theincriminating nature of the object that Officer Trick first feltwith the palm of his open hand was immediately apparent to him atthat time.
 {¶ 67} The object was small, irregular in shape, and locatedinside the watch pocket of Defendant's cut-off blue jeans, whichis typically a tight spot. Unlike a gun or a knife, which by itsmass and configuration is readily recognizable, the object thatOfficer Trick felt was not so readily recognizable.
 {¶ 68} The officer testified that he first felt the objectwith the palm of his open hand The sense of touch that involvesmight readily reveal the presence of a gun or knife, but it wouldnot so easily reveal the presence of a small rock of crackcocaine.
 {¶ 69} Finally, the officer's admission that he manipulatedthe object with his fingertips to determine what it was goesdirectly to the heart of the test Dickerson imposes. It crossesthe line from a weapons search to a search for contrabandOfficer Trick conceded that he knew the object wasn't a weapon.(T. 25). He also stated, candidly, that he told Defendant beforehe searched him that the purpose for the pat-down was to locateany contraband Defendant had.
 {¶ 70} The "plain feel" test doesn't require absolutecertainty; probable cause is sufficient. State v. Woods (August2, 1996), Montgomery App. No. 15392. However, probable causerequires indications which are sufficiently clear in their natureand meaning to cause a prudent person to believe that criminalactivity is afoot. Officer Trick's testimony, taken as a whole,fails to demonstrate that degree of clarity with respect to theincriminating nature of the object he seized, when he first feltit and before he manipulated it with his fingertips to determinewhat it was, which the "plain feel" exception requires.
 {¶ 71} The assignment of error is sustained. The judgment ofthe trial court will be reversed, and the matter will be remandedfor further proceedings consistent with this opinion.
 Fain, P.J. and Brogan, J., concur.
[1] The underlined words do not appear in the typed transcriptthat was filed on August 8, 2004, and subsequently made a part ofthe record of this proceeding. They do appear and are heard inthe videotape transcript of the suppression hearing that wasfiled pursuant to App.R. 9(A).