OPINION
{¶ 1} Defendant, Ron Dunson, appeals from his conviction for possession of crack cocaine, R.C. 2925.11(A), and the sentence imposed for that offense pursuant to law. Dunson's conviction was based on his plea of no contest to that offense as charged, which he entered after the trial court had denied *Page 2 
Dunson's Crim.R. 12(C)(3) motion to suppress evidence. Dunson filed a timely notice of appeal from his conviction and sentence.
ASSIGNMENT OF ERROR
 {¶ 2} "THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION TO SUPPRESS."
 {¶ 3} The evidence Dunson sought to suppress was seized by Dayton Police Department Sergeant Steven Abney from inside Dunson's pants pocket. Because the search and seizure was warrantless, it was the State's burden to show that the intrusions were nevertheless reasonable because one of the recognized exceptions to the Fourth Amendment's warrant requirement applies. The trial court denied Dunson's motion to suppress on findings that the required exceptions were shown. We review the error in that judgment which Dunson assigns on appeal on a de novo standard. Applying that standard, we give no deference to the trial court's conclusions of law, but defer to the trial court's findings of fact if they are supported by competent, credible evidence.
 {¶ 4} Testimony of Sergeant Steven Abney of the Dayton Police Department at the hearing on Dunson's motion to suppress demonstrates the following facts. On September 22, 2005, Sergeant Abney was on patrol in his marked cruiser in *Page 3 
the area of the 1800 block of Germantown Street in Dayton. Shortly before 1:00 p.m., as he drove past the Food City carryout, Sergeant Abney noticed a vehicle that was backed into an adjacent vacant lot and positioned next to the carryout. Sergeant Abney observed two people inside the vehicle. Both "ducked down" when they saw Sergeant Abney's cruiser. Suspicious of criminal activity, Sergeant Abney decided to investigate.
 {¶ 5} When Sergeant Abney approached the vehicle on foot, he observed Defendant Dunson, who was in a rear passenger seat, slump over and appear to reach toward the floor. Sergeant Abney recognized Dunson as a person known for his involvement in drugs and violence toward police officers. Sergeant Abney testified that the area is known for drug activity, and that he has made numerous arrests there, half of those being drug-related. He also testified that he could smell a strong odor of marijuana coming from inside the vehicle as he approached it.
 {¶ 6} Sergeant Abney first spoke with the other occupant of the vehicle, a female who was in the driver's seat. After concluding that she was being untruthful about her identity, Sergeant Abney requested back-up assistance. When that assistance arrived, Sergeant Abney ordered Defendant from the *Page 4 
vehicle.
 {¶ 7} Based on his observations that day, his experience in the area, and his knowledge of Defendant's history of drug activity and violence toward officers, Sergeant Abney decided to perform a weapons pat-down. When in the course of that search he patted the area of Defendant's right rear pants pocket, Defendant turned quickly and violently away. Sergeant Abney then grabbed that area once more, and when he did he felt what he believed to be a plastic baggie inside the pocket.
 {¶ 8} Sergeant Abney testified that "[b]aggies are often the choice method of people who carry drugs to conceal drugs." (T. 12). Based on that knowledge, his knowledge of Defendant's drug activity, his experience making drug arrests in the same area, the smell of marijuana he detected, and Defendant's sudden pulling away when the pocked was patted, Sergeant Abney decided to reach inside Defendant's pants pocket to retrieve the baggie. When he removed the baggie, Sergeant Abney discovered crack cocaine inside, and he arrested Defendant for drug possession.
 {¶ 9} Defendant Dunson's motion to suppress challenged the foregoing search and seizure on two accounts. First, he argued that Sergeant Abney lacked the reasonable and *Page 5 
articulable suspicion of criminal activity required under the rule ofTerry v. Ohio (1968), 391 U.S. 1, 10 L.Ed.2d 889, 88 S.Ct. 1868, in order to detain Defendant for investigation as he did. We do not agree. Sergeant Abney's observations of the vehicle, coupled with the furtive movements of its occupants when they saw him, State v. Bobo (1988), 37 Ohio St.3d 177, and the odor of marijuana coming from inside, combined in their totality to create the reasonable and articulable suspicion of criminal activity that Terry requires.
 {¶ 10} Defendant does not challenge the weapons pat-down.Terry requires a reasonable suspicion that a suspect may be armed and dangerous, not merely that criminal activity is afoot. Defendant's history of violence toward police officers, coupled with his having slumped down toward the floor of the vehicle when he saw Sergeant Abney approach, created the reasonable and articulable suspicion thatTerry requires for a weapons pat-down.
 {¶ 11} The second challenge that Defendant makes is to Sergeant Abney's retrieval of the plastic baggie containing crack cocaine from inside Defendant's pants pocket. Defendant argues that the particular search and seizure involved violates the proscriptions of the "plain feel" doctrine *Page 6 
announced in Minnesota v. Dickerson (1993), 508 U.S. 366,113 S.Ct. 2130, 124 L.Ed.2d 334.
 {¶ 12} In State v. Justus, Montgomery App. No. 20906, 2005-Ohio-6540, we wrote:
 {¶ 13} "{¶ 11} Concerned with departures from the traditional probable cause requirement that its `reasonable suspicion' standard permits, Terry emphasized that `[a] search for weapons in the absence of probable cause to arrest, however, must like any other search, be strictly circumscribed by the exigencies which justify its initiation.'Id., at 25. Therefore, at most, only `a limited search of the outer clothing for weapons' is permitted. Id.
 {¶ 14} "{¶ 12} In Terry, the officer who reasonably suspected that Terry had a weapon found a knife inside his coat pocket. That was in 1963. Since then, with the great increase in illicit drug activity, many pat-down searches have yielded not weapons but drugs or drug paraphernalia of various kinds. Concern with potential abuses in that trend prompted the Supreme Court in Minnesota v. Dickerson to prescribe limits on methods used in weapons pat-downs that yield contraband. Building on the `plain view' exception to the warrant requirement, Dickerson held that an officer who is engaged in a weapons pat-down lacks the probable cause *Page 7 
required to seize nonthreatening contraband detected through his sense of touch when its criminal character is not immediately apparent to him upon touching it.
 {¶ 15} "{¶ 13} The frisking officer in Dickerson felt a small lump in the suspect's front pocket and then, upon further tactile examination, concluded that the object was a lump of crack cocaine in a plastic or cellophane bag, which the officer removed from the suspect's pocket. The Supreme Court held that the seizure of drugs was unlawful because the officer exceeded the bounds of Terry by squeezing, sliding, and manipulating the object. The officer's authority was limited to running his hands over the outer clothing of the suspect to determine if he had a weapon. Once he concluded that there was no weapon, the officer had no further authority to run his hands over the suspect's body. While the lump may have made the officer suspicious, he could not continue to feel the object to confirm those suspicions.
 {¶ 16} * * *
 {¶ 17} "¶ 51} In Dickerson, the Supreme Court stated that the frisking
 {¶ 18} "{¶ 52} `officer in this case overstepped the bounds of the "strictly circumscribed" search for weapons allowed underTerry. See Terry, 392 U.S., at 26, 88 S.Ct., at 1882. *Page 8 
Where, as here, "an officer who is executing a valid search for one item seizes a different item," this Court rightly "has been sensitive to the danger . . . that officers will enlarge a specific authorization, furnished by a warrant or an exigency, into the equivalent of a general warrant to rummage and seize at will." Texas v. Brown, 460 U .S., at 748, 103 S.Ct., at 1546-1547 (STEVENS, J., concurring in judgment). Here, the officer's continued exploration of respondent's pocket after having concluded that it contained no weapon was unrelated to "[t]he sole justification of the search [under Terry:] . . . the protection of the police officer and others nearby." 392 U.S., at 29,88 S.Ct., at 1884. It therefore amounted to the sort of evidentiary search thatTerry expressly refused to authorize, see id., at 26, 88 S.Ct., at 1882, and that we have condemned in subsequent cases. See Michigan v.Long, 463 U.S., at 1049, n. 14, 103 S.Ct., at 3480-3481;Sibron, 392 U.S., at 65-66, 88 S.Ct., at 1904.' Id., at 378."
 {¶ 19} In the present case, there is no suggestion that Sergeant Abney manipulated the object he felt inside Defendant's pocket from outside in order to determine the object's identity, as the officer had inDickerson. Rather, the issue is whether Sergeant Abney was authorized to reach into Defendant's pocket to seize the article because its *Page 9 
criminal character was immediately apparent to Sergeant Abney when he felt it from outside.
 {¶ 20} Under the "plain feel" doctrine, the physical features of the article which are revealed to the officer through his sense of touch must cause the identity of the article, and from that its criminal character, to be immediately apparent to the officer. However, it need only be probable — that is, more likely than not — that the article possesses that criminal character.
 {¶ 21} In numerous cases of this kind, when an officer conducting a weapons pat-down feels a hard, lumpy substance inside a suspect's pocket, the officer concludes, based on the officer's experience in making drug arrests, that the substance is crack cocaine. When the crack cocaine is then retrieved from inside the suspect's pocket, it typically is inside a plastic baggie, which is frequently used to carry the drug for purposes of its sale or use.
 {¶ 22} In the present case, Sergeant Abney felt only a plastic baggie, and based on his experience he concluded that it likely contained crack cocaine. The physical features of the article that permitted Sergeant Abney to identify it as a plastic baggie were immediately apparent to him. The further issue is whether criminal character of the baggie was likewise *Page 10 
immediately apparent.
 {¶ 23} Officer Abney testified that he could smell the odor of marijuana coming from inside the vehicle in which Defendant had been seated. Sergeant Abney further testified that Defendant was a person known to him for engaging in drug activity, and that he had seen Defendant and his companion "duck down" to avoid being seen by police. During the weapons pat-down, Defendant moved violently away when Abney patted the pocket where the baggie was located. Sergeant Abney further testified that "[b]aggies are often the choice method of people who carry drugs to conceal drugs." These facts, in their totality, present probable cause for Officer Abney to believe that the baggie felt inside Defendant's pocket contained illegal drugs, and the officer was therefore authorized by law to seize it as he did.
 {¶ 24} The logic of Dickenson suggests that the required criminal character of an object the officer feels during a weapons pat-down ought to be physical features of an object which identify it as a weapon. However, when the object is clearly not a weapon, its criminal character may yet be apparent because of the nature of the article and the circumstances in which it is discovered. In that situation, the totality of those circumstances, including the officer's *Page 11 
experience and explanation, must be sufficient to present probable cause to believe that the identity of the object he feels is specific to criminal activity.
 {¶ 25} We emphasize that our holding is based on the totality of these particular circumstances. Detecting a plastic baggie inside Defendant's pocket, standing alone, or even in combination with secondary facts such as the reputation of the area for drug activity, would likely be insufficient to demonstrate that the criminal character of the article Sergeant Abney felt was immediately apparent to him. The odor of marijuana, and especially, Defendant's attempt to avoid discovery of what was inside his pants pocket, add critical support to the finding of probable cause we make.
 {¶ 26} The assignment of error is overruled. The judgment of the trial court will be affirmed.
 BROGAN, J. And DONOVAN, J., concur. *Page 1