[Cite as *State v. Vaughn*, **2012-Ohio-6227**.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25304 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 2011-CR-3738 |
| v. | : | |
| | : | |
| LATASHA ANN VAUGHN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 31st day of December, 2012.

. . . . . . . . . .

MATHIAS H. HECK, JR., by KIRSTEN A. BRANDT, Atty. Reg. #0070162, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellant

VICTOR A. HODGE, Atty. Reg. #0007298, Law Office of the Public Defender, 117 South Main Street, Suite 400, Dayton, Ohio 45422
        Attorney for Defendant-Appellee

. . . . . . . . . . . . .

FAIN, J.

{¶ 1}    Plaintiff-appellant, the State of Ohio, appeals from an order suppressing evidence. The State contends that the trial court erred in suppressing evidence – a plastic

baggie and its contents – seized from the sweatshirt pocket of defendant-appellee Latasha A. Vaughn, where a police officer observed it.

{¶ 2}    We disagree.  The police officer who seized the evidence – a plastic baggie visible in Vaughn's sweatshirt pocket – was aware of the following facts:   an anonymous tip that Vaughn, an hour before leaving her residence to get into a car, was selling drugs at her residence; the familiarity of the officer with the fact that plastic baggies are a common method of carrying illegal drugs; and the fact that when the officer asked Vaughn what was in the baggie, she said it was "nothing," and started to "go for it, like put her hand in her pocket." These facts are not sufficient to give rise to probable cause for the officer to believe that the plastic baggie he seized contained contraband.

{¶ 3}    Although another officer present at the scene testified as to additional facts that might enter into a calculation of probable cause, there is nothing in the record to establish that the officer who made the seizure was aware of those facts.  Nor was the officer making the seizure acting at the direction, or at the suggestion, of the other officer.

{¶ 4}    The order of the trial court suppressing evidence is Affirmed.

### I.   The Stop and Seizure

{¶ 5}    Dayton police officer David House was on patrol one evening at the end of October 2011, when he responded to a dispatch reporting that Latasha Vaughn was selling crack cocaine from her residence at 1320 Morris Avenue.  The report was based on an anonymous tip that Vaughn was selling at that time.  House responded to the scene almost an hour after the dispatch.

{¶ 6} House was familiar with the residence and the area. He knew that it was a high-drug area. He testified that: " * * * at least three or four years, on a random basis, we would get hotline complaints on the narcotics drug hotline reference [sic] drug sales occurring from 1320 Morris Avenue." Tr. 8. House testified that: "Many of those complaints listed Ms. Vaughn by name as being involved in the sales of drugs at that location." *Id.*

{¶ 7} House also testified that he had arrested individuals for possession of drugs after having left Vaughn's house. *Id.* House did not indicate whether any of the individuals he arrested had ever implicated Vaughn. House testified that he was involved in an incident in which an individual [evidently not Vaughn] sold "us" narcotics while in Vaughn's back yard. *Id.*

{¶ 8} About ten minutes after House arrived at the scene, he observed a Jaguar drive past the residence while honking three times on the horn. Only one person, a woman, was in the car. The car continued past, used a business parking lot to turn around, and returned, stopping in the street in front of 1320 Morris Avenue. The car again honked three times.

{¶ 9} Vaughn and another woman left the residence. The other woman walked across the street. Vaughn got into the car. The Jaguar then drove off. House and another officer, Scott Pendley, who had also responded to the scene, followed the car, and stopped it. They based the stop on a violation of Dayton Revised Code of General Ordinances 94.05, which prohibits honking a horn except to warn of danger, but they acknowledged that they were using that as a pretext to see if they could discover any evidence of illegal drug activity.

{¶ 10} House obtained identification from the driver. Vaughn said that she did not have any identification with her, and that she had just left her residence. House, who had dealt with Vaughn on one occasion, asked her if her name was Latasha, and she said that it

was.

**{¶ 11}** As House was talking with Vaughn, he could see "a wad of folded money" in the left pocket of her sweatshirt, which was open. House told Vaughn to get out of the car and speak with Pendley, who was on the passenger side. House testified that "as she was getting out, she took her hand and she pressed the pocket back against her body so that she now smushed the top of the pocket closed." Tr. 14.

**{¶ 12}** After Vaughn had stepped out of the car, House told Pendley, across the top of the car, that Vaughn "had a wad of money in her left coat pocket." House testified that while the money, which turned out to be eleven, one-dollar bills, "wasn't a concern," he was concerned about the fact that Vaughn had "pushed the pocket closed so that you could no longer see it." *Id.*

**{¶ 13}** Pendley testified that "evidently [Vaughn] heard Officer House tell me that about the money and she grabbed the – a wad of money with her hand and showed it to me stating that it – it was just gas money or it wasn't a large amount of money; just how it was wadded up, it looked like a large amount of money." Tr. 30. Pendley testified that neither officer had asked Vaughn to remove the money from her pocket.

**{¶ 14}** Once Vaughn had removed the wad of money from her pocket, Pendley could see, in the pocket, "a baggie, like a cellophane sandwich baggie, with the top exposed out of her pocket." Tr. 31. According to Pendley, the baggie "appeared to have a knot in the top of the bag." *Id.* Pendley testified: "That's a common way narcotics are packaged up and I've seen it thousands of times." *Id.*

**{¶ 15}** Pendley asked Vaughn what was in the baggie. "She stated it was nothing

and she immediately started to go for it, like put her hand in her pocket." *Id.* at 32.

{¶ 16} Before Vaughn could reach the baggie, Pendley stopped her hand with his right hand, went into her pocket, and grabbed the baggie. It contained crack cocaine.

{¶ 17} Pendley testified that when Vaughn reached for her pocket, he was concerned about weapons (although he did not pat her down for weapons), and was also concerned that "if it was contraband that she could destroy it." *Id.*

{¶ 18} After the officers took Vaughn into custody, a digital scale was recovered from her person.

## II. The Course of Proceedings

{¶ 19} Vaughn was charged by indictment with one count of Possession of Cocaine, in an amount equal to or exceeding five grams, but less than ten grams, in violation of R.C. 2925.11(A), a felony of the fourth degree, and one count of Possession of Drug Paraphernalia, in violation of R.C. 2925.14(C)(1), a misdemeanor of the fourth degree.

{¶ 20} Vaughn moved to suppress the evidence, contending that it was obtained as the result of an unlawful search and seizure. At the hearing on the motion, House and Pendley were the only witnesses. Following the hearing, the trial court suppressed the evidence, issuing a written decision.

{¶ 21} From the order suppressing the evidence, the State appeals, assigning as its sole assignment of error:

> WHEN OFFICER PENDLEY OBSERVED THE PLASTIC BAGGIE IN
> VAUGHN'S POCKET, THE TOTALITY OF FACTS WITHIN HIS KNOWLEDGE

PROVIDED HIM WITH PROBABLE CAUSE TO BELIEVE THAT THE BAGGIE CONTAINED ILLEGAL DRUGS. BECAUSE HE HAD PROBABLE CAUSE, HE WAS ENTITLED UNDER THE FOURTH AMENDMENT TO SEIZE THE BAGGIE. THE TRIAL COURT COMMITTED ERROR WHEN IT SUPPRESSED THE CRACK COCAINE.

### III. Pendley Lacked Probable Cause to Believe that the Baggie He Observed in Vaughn's Pocket Contained Contraband

{¶ 22} The decision to seize the baggie was made by Pendley; no other officer directed him to make the seizure, or suggested that he make the seizure. Therefore, as noted in the State's assignment of error, the test is whether the totality of facts within Pendley's knowledge provided him with probable cause to believe that the baggie contained illegal drugs. The record contains numerous facts, which the State cites in support of its argument, that were known to *House*, but there is nothing in the record to establish that these facts were known to Pendley, who made the seizure.

{¶ 23} House testified that there had been numerous anonymous reports of drugs being sold from Vaughn's residence, some of which named Vaughn as having been personally involved. Nothing in the record establishes that Pendley was aware of this fact. House testified that he was present when an individual (evidently not Vaughn) sold "us," (evidently meaning the police), drugs in Vaughn's back yard. Again, nothing in the record establishes that Pendley was aware of this fact.

{¶ 24} House, but not Pendley, testified that he was familiar with the area's reputation as a high-drug area. House testified that he had arrested individuals for possession

of drugs after they had left Vaughn's residence. There is nothing in the record to establish that Pendley was aware of this fact.

{¶ 25} Finally, House testified that as Vaughn was getting out of the car, she pressed her hand against the open pocket with the wad of money in it, "smushing" it closed. This fact would seem to be readily explicable as an attempt to keep the money from falling out of the pocket while Vaughn was getting out of the car, especially since as soon as she got out of the car she removed the money from her pocket, exposing the underlying baggie to view. But again, there is nothing in the record to indicate that Pendley was aware of this fact.

{¶ 26} Pendley did respond to the dispatch. He was therefore presumably aware that the dispatch was based upon an anonymous report that Vaughn had been selling drugs from her house, received about an hour before the seizure.

{¶ 27} Pendley was also aware that Vaughn was carrying a "wad" of money in her pocket. Indeed, Vaughn pulled the wad out of her pocket to show Pendley that it was just gas money, or that it did not amount to much.

{¶ 28} Finally, it was Pendley who observed the baggie in Vaughn's sweatshirt pocket. He also saw her reach for it after he asked her what was in the baggie, and she responded that it was "nothing." This is consistent with her previous reaction to the mention of her wad of money in that pocket, which consisted of her pulling the money out of her pocket to show the officers that it was of no consequence. Presumably, this was not her intent with respect to the baggie, since it contained crack cocaine, but when she exhibited that reaction, Pendley did not know what was in the baggie. Vaughn's reaction of reaching for the baggie, from Pendley's perspective at that time, was as consistent with an attempt to show him

that the baggie, like the wad of money, was of no consequence, as it was consistent with Pendley's expressed concern that she was either reaching for a weapon or attempting to destroy the evidence. Pendley did not attempt to pat Vaughn down for weapons, and in view of the fact that Vaughn was in the presence of two police officers, it seems unlikely that she had any realistic chance of destroying the evidence.

{¶ 29} The State argues that the totality of the circumstances gave rise to a conclusion, on Pendley's part, that there was probable cause to believe that the baggie he saw in Vaughn's pocket contained contraband. In support of its argument, the State cites *State v. Dunson*, 2d Dist. Montgomery No. 22219, 2007-Ohio-6681. In that case, the officer who seized the baggie from the defendant's pocket testified as to the following facts that were within his knowledge when he made the seizure: he could smell the odor of marijuana coming from inside the vehicle in which the defendant had been seated; he knew that the defendant had engaged in drug activity in the past; he saw the defendant and his companion "duck down" to avoid being seen by the police; the defendant moved violently away when the officer patted the pocket where the baggie was located; and the officer testified that "[b]aggies are often the choice method of people who carry drugs to conceal drugs." *Id.*, ¶ 23. The only one of these facts within the seizing officer's knowledge in *Dunson* to have a counterpart in the case before us is that Pendley, in the case before us, testified that plastic baggies like the one he observed in Vaughn's pocket are "a common way narcotics are packaged up and I've seen it thousands of times."

{¶ 30} We agree with the State that in calculating whether an officer has probable cause to believe that a container in plain view contains contraband, the facts and circumstances known to him must be aggregated. We conclude that the facts and

circumstances known to Pendley fell short of establishing that it was "probable – that is, more likely than not – that the article [seized] possesses [a] criminal character." *Dunson*, at ¶ 20.

**{¶ 31}** In her brief, Vaughn argues that officer House lacked authority to order her out of the car, since he lacked a particularized suspicion that she was armed and dangerous. An order to exit a car that is lawfully stopped "does not have to be justified by any constitutional quantum of suspicion." *State v. Evans*, 67 Ohio St.3d 405, 408, 618 N.E.2d 162 (1993). And in *State v. Watson*, 2d Dist. Montgomery No. 15449, 1996 WL 491793, *3 (Aug. 23, 1996), we applied that holding in *Evans* to an order to a passenger to exit a stopped vehicle. But we find it unnecessary to address Vaughn's argument that House lacked authority to order her out of the car, since we can affirm the suppression order without reaching that issue.

**{¶ 32}** The State's sole assignment of error is overruled.

## IV. Conclusion

**{¶ 33}** The State's sole assignment of error having been overruled, the order of the trial court from which this appeal is taken is Affirmed.

. . . . . . . . . . . .

FROELICH, J., concurs.

HALL, J., concurring:

**{¶ 34}** An hour after receiving an anonymous drug-trafficking complaint implicating the defendant, Officers Pendly and House responded . The car in which the defendant was

riding was stopped in the immediate vicinity. When she exited the vehicle, her hoodie pocket contained a "wad" of money, which she voluntarily removed. In her pocket, Officer Pendly could see a baggie with a knot in the top. As the majority quotes, he testified: "That's a common way narcotics are packaged up and I've seen it thousands of times." (T. 31). Officer Pendly did not specifically state that the baggie's incriminating nature was immediately apparent. But if I heard that evidence, I would conclude that it was immediately apparent to this experienced officer that he observed drug packaging in her pocket. He then would be constitutionally entitled to retrieve it.

{¶ 35} The trial court factually determined that the incriminating nature of the tied plastic baggie was not immediately apparent. In my view, a tied-off baggie, subsequently found to contain a volume of crack cocaine about the size of a half-dollar, would not be mistaken by an experienced officer as possibly containing a sandwich, as surmised by the trial court. Because the volume is small, the contraband typically is placed in a corner of the plastic material, which then is tied in a knot, with the excess plastic routinely torn off. Even though the "baggie" is of sandwich-bag-like material, it looks nothing like a zip-lock or fold-over plastic sandwich bag. However, at a suppression hearing, evaluation of the evidence is for the trial court. *State v. Brooks*, 75 Ohio St.3d 148, 154, 1996-Ohio-134, 661 N.E.2d 1030. On this record, I defer to the finding of the trial court and join in the affirmance.

. . . . . . . . . . . .

Copies mailed to:

Mathias H. Heck, Jr.
Kirsten A. Brandt
Victor A. Hodge
Hon. Steven K. Dankof