[Cite as *State v. Gorby*, 2014-Ohio-2445.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO
                                       :

                                         :        Appellate Case No. 25875

      Plaintiff-Appellee         :

                                         :        Trial Court Case No. 2012-CR-3278

v.                                     :

                                       :

MELISSA D. GORBY           :        (Criminal Appeal from

                                       :        Common Pleas Court)

      Defendant-Appellant     :

                                       :

. . . . . . . . . . .

O P I N I O N

Rendered on the 6th day of June, 2014.

. . . . . . . . . .

MATHIAS H. HECK, JR., by APRIL F. CAMPBELL, Atty. Reg. #0089541, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

RICHARD L. KAPLAN, Atty. Reg. #0029406, 683 Miamisburg-Centerville Road, Suite 202, Dayton, Ohio 45459
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

    **{¶ 1}**    Defendant-appellant Melissa Gorby appeals from her conviction and sentence,

following a no-contest plea, on one count of Possession of Heroin, in an amount equaling or exceeding 10 unit doses, but less that 50 unit doses, in violation of R.C. 2925.11(A), a felony of the fourth degree. Gorby contends that the trial court erred by overruling her motion to suppress evidence obtained as a result of an unlawful search and seizure.

{¶ 2} We conclude that the evidence was obtained from Gorby's person as the result of an unlawful seizure, because the State failed to prove that the officer conducting the pat-down search for weapons had probable cause to believe that "lumpy cellophane bag" she felt underneath Gorby's waistband was contraband. Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.

### I. A Car in which Gorby Is a Passenger Is Stopped for a Traffic Violation, Leading Ultimately to a Pat-Down Search of Gorby for Weapons and the Seizure of a Cellophane Bag Containing Heroin Capsules from Her Person

{¶ 3} Gorby was a passenger in a car being driven by George Seagull between 2:00 p.m. and 10:00 p.m. in mid-July, 2012.[1] There was a second, male passenger. Montgomery County Sheriff's Deputy Brian Shiverdecker stopped the car for a turn-signal violation. The stop resulted in Seagull's car and Shiverdecker's cruiser being parked on the premises of a gas station.

{¶ 4} At the beginning of the stop, Shiverdecker obtained Seagull's consent to a search of his car, and Shiverdecker obtained identification from Seagull and his two passengers. Shiverdecker ran the ID's. Nothing out of the ordinary was found concerning Seagull and his

---

[1] The time of these events is not set forth in the record, but the officer making the initial stop, Montgomery County Sheriff's Deputy Brian Shiverdecker, testified that the stop occurred during his shift, which was from 2:00 p.m. to 10:00 p.m.

male passenger. Gorby was found to be under a drug-related driver's license suspension. The State presented no evidence that Shiverdecker ever returned the identification documents, thereby effectively resulting in the detention of both passengers, besides the driver. Shiverdecker testified that none of the three was free to leave.

{¶ 5} Within a short time, Montgomery Sheriff's Deputy Krimmer arrived to back up Deputy Shiverdecker. All three occupants of Seagull's car exited the car, and stood near Shiverdecker's patrol vehicle. Seagull and his male passenger were patted down for weapons; no weapons were found. At this time, there was no intention to pat down Gorby for weapons. Gorby, Seagull, and the other passenger continued to stand near Shiverdecker's patrol vehicle. They were not handcuffed.

{¶ 6} Shiverdecker then began his consensual search of Seagull's car. Nothing was found as a result of this search, which concluded about twenty minutes after the initial stop.

{¶ 7} At some point, Sergeant Troy Bodine, of the Montgomery County Sheriff's Office, pulled into the parking area of a nearby shopping center, and began keeping a watch on Shiverdecker, Krimmer, Seagull, Gorby, and the other passenger. Bodine testified that he avoided parking at the gas station so as not to unduly obstruct traffic at the gas station. Shortly after Shiverdecker began his search, a man pulled up in a pickup truck alongside Sergeant Bodine. The man, who declined to identify himself, told Bodine that he had walked out of the gas station while the three individuals were standing outside the patrol vehicle near the stopped car, and saw the woman turn away and appear to place something under her clothes in her waistband or in her groin area. He had no idea what it was. Bodine passed this information along to Deputy Krimmer. A female officer was requested to perform a pat-down search of

Gorby for weapons.

{¶ 8}   Near the end of Shiverdecker's search of the car, Montgomery County Sheriff's Deputy Amber Haas arrived to perform a pat-down search of Gorby for weapons.   Haas was not told "what the pat-down was for, what they suspected."

{¶ 9}   Deputy Haas asked Gorby:  "Do you have a problem with me searching you? Do you have anything on you I need to know about, any drugs or weapons for a pat-down?" Gorby gave no verbal response, but turned, either placed her hands on Shiverdecker's patrol cruiser, or had her hands placed there by Haas,[2] and spread her legs.  Gorby submitted to the pat-down search without protest.

{¶ 10}   Concerning the pat-down search, Haas testified on direct as follows:

Q.   And during that pat-down, did you find anything?

A.   Yes.   I found – I felt a large lump in the bladder region of a female.

* * *

Q.   Okay.   And you said you noticed a lump in her bladder region?

A.   Yeah.   When I went around her – if I remember correctly she was wearing a short skirt and a tank top, and when I searched her front – her frontal area, I felt a large lump.

Q.   Okay.   And when you felt that lump, what did you suspect?

A.   I told her, "What is it?   You can hand it to me."

Q.   And when you ran your hand over that lump, was there anything out of the ordinary about that lump?

---

[2]  Haas's testimony is inconsistent on this point.

A. Yeah.  It was lumpy, and you could feel the cellophane –

Q. Okay.

A. – off of it, the crunchiness.

Q. And when you asked her – so you felt that and then you said what?

A. I said, "You can hand it to me."

Q. And what did she do?

A. She dropped it on the ground, and Shiverdecker picked it up.

{¶ 11}  On cross-examination, Haas testified as follows:

Q. Okay.  Now you said that you felt, when you patted her down, you felt a lumpy cellophane bag –

A. Yeah.

Q. – with something in it, around her bladder area?

A. Yeah.

Q. Could you see it?

A. No.

Q. Okay.  And you said you didn't manipulate anything, you didn't turn anything, just used the flat of your hands?

A. Correct.

Q. Could you tell that was not a weapon?

A. Could I tell that was not a weapon?

Q. Right.

A. No.

Q. What kind of weapon did you think it was?

A. I knew it was contraband.

Q. Is contraband a weapon?

A. No.

Q. What made you know it was contraband?

A. An irregular, large lump.

{¶ 12} Following the suppression hearing, the trial court announced its decision overruling the motion. With respect to the seizure, the trial court reasoned:

Finally the deputy testified on cross that the irregular, large lump, she knew immediately to be contraband. So under the plain feel doctrine, in this district, that was an appropriate order to remove it.

## II. The Course of Proceedings

{¶ 13} Following the overruling of her motion to suppress, Gorby pled no contest to the charge. The trial court found her guilty, and sentenced her to community control sanctions.

{¶ 14} From her conviction and sentence, Gorby appeals.

## III. The State Failed to Prove that Deputy Haas Had Probable Cause to Believe that the Object She Felt Underneath Gorby's Clothing Was Contraband

{¶ 15} Gorby's First Assignment of Error is as follows:

THE TRIAL COURT ERRED BY OVERRULING MS. GORBY'S MOTION TO SUPPRESS.

{¶ 16} In support of this assignment of error, Gorby makes a number of arguments that we need not address. We do note, in passing, however, that both Gorby and the State address the issue of whether the traffic stop was unreasonably prolonged, resulting in Gorby's having consented to the pat-down search[3] during her unlawful detention as a result of an unduly prolonged traffic stop. We question whether the analysis of whether the traffic stop was unduly prolonged is material.

{¶ 17} Near the beginning of the traffic stop, well within the reasonable time it would take to process a turn-signal citation, Seagull consented to a search of his car. Deputy Shiverdecker was then authorized to perform a search, during which he was not engaged in issuing a citation for the turn-signal violation. If there is an unreasonable prolongation issue in this case, it would be the unreasonable prolongation of the car search, not the unreasonable prolongation of the traffic stop. Issues involving the prolongation of traffic stops typically involve whether a consent to search a vehicle is obtained during an unreasonable prolongation of a traffic stop. *See Ohio v. Robinette*, 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1966).

{¶ 18} Also, the issue in this case would be whether Gorby's consent to a pat-down search of her person was obtained during an unreasonable prolongation of *her* detention, not Seagull's. Because the stop remained a stop for a minor traffic violation up until the heroin was found on Gorby's person, it is questionable whether it was reasonable to continue to detain her during the consensual search of Seagull's vehicle, and the evidence in the record indicates that she was detained; Deputy Shiverdecker testified that he took her identification, and there is no evidence that her identification was ever given back to her.

---

[3] Gorby also disputes that the State proved that she consented.

{¶ 19}  We emphasize that we need not, and do not, resolve the undue prolongation issue, because we find that the issue of the lawfulness of the seizure of the evidence from Gorby's person is dispositive.

{¶ 20}  In her brief, Gorby argued simply that there is no such thing as the plain-feel doctrine.[4]  We have recognized the existence of the doctrine as set forth in *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).  *See State v. Dunson*, 2d Dist. Montgomery No. 22219, 2007-Ohio-6681, ¶ 20, 24:

> Under the "plain feel" doctrine, the physical features of the article which are revealed to the officer through his sense of touch must cause the identity of the article, and from that its criminal character, to be immediately apparent to the officer.  However, it need only be probable – that is, more likely than not – that the article possesses that criminal character.
>
> * * *
>
> The logic of [*Dickerson*] suggests that the required criminal character of an object the officer feels during a weapons pat-down ought to be physical features of an object which identify it as a weapon.  However, when the object is clearly not a weapon, its criminal character may yet be apparent because of the nature of the article and the circumstances in which it is discovered.  In that situation, the totality of those circumstances, including the officer's experience and explanation, must be sufficient to present probable cause to believe that the identity of the

---

[4]  At the argument of this appeal, Gorby acknowledged the existence of the plain-feel doctrine.

object he feels is specific to criminal activity.

{¶ 21} In the case before us, Deputy Haas testified that she knew that the object she felt underneath Gorby's clothing was contraband. Obviously, then, she believed that it was contraband. The issue is whether she had probable cause for that belief. She did not testify that her conclusion that the object she felt was contraband was based upon her training or experience. She also did not testify that it was based upon Gorby's drug-related driver's license suspension, or the information the anonymous driver of the pickup truck had passed on to Sergeant Bodine; indeed, she testified that she was unaware of these facts when she performed the pat-down search.

{¶ 22} In *State v. Dunson, supra,* at ¶ 25, we opined:

> We emphasize that our holding is based on the totality of these particular circumstances. Detecting a plastic baggie inside Defendant's pocket, standing alone, or even in combination with secondary facts such as the reputation of the area for drug activity, would likely be insufficient to demonstrate that the criminal character of the article Sergeant Abney felt was immediately apparent to him. The odor of marijuana, and especially, Defendant's attempt to avoid discovery of what was inside his pants pocket, add critical support to the finding of probable cause we make.

{¶ 23} The case before us presents the fact-pattern contemplated in the above-quoted paragraph in *State v. Dunson*; there is nothing in this record to support a finding that Deputy Haas had probable cause for her belief that the object she felt inside Gorby's clothing was contraband beyond the mere fact that it was a lumpy object in cellophane wrapping. We conclude,

therefore, that the trial court erred in finding that Deputy Haas had probable cause to believe that the object was contraband.

{¶ 24} Deputy Haas did testify that she could not tell that the object was not a weapon, but when asked what kind of a weapon she thought it was, she just said that she knew it was contraband. She never indicated why she believed that the object might be a weapon. Indeed, she testified that: "I think everybody has a weapon until I pat them down." This would suggest that she was predisposed to believe that anything she felt might be a weapon.

{¶ 25} We find nothing in the record that would support a finding that Deputy Haas reasonably believed the lumpy object wrapped in cellophane was contraband when she ordered Gorby to give it to her. And the trial court did not make that finding, basing its decision instead upon Deputy Haas having concluded that the object was contraband.

{¶ 26} Because the State failed to prove that Deputy Haas had probable cause for her belief that the object she felt was contraband, her seizure of that object was unlawful, and the trial court erred when it overruled Gorby's motion to suppress. Gorby's First Assignment of Error is sustained.

## IV. Gorby's Second Assignment of Error Is Moot

{¶ 27} Gorby's Second Assignment of Error is as follows:

THERE WAS NO EVIDENCE PRESENTED BY THE STATE THAT ANY CONTRABAND WAS SEIZED AND THIS WARRANTS REVERSAL AND A GRANTING OF THE MOTION TO SUPPRESS.

{¶ 28} We agree with the State that it was not required to prove that the object retrieved from Gorby's person was contraband. Indeed, if the object was neither contraband, nor evidence of Gorby's guilt of the charged offense, then any error in the trial court's ruling on the motion to suppress would necessarily be harmless.

{¶ 29} In any event, we need not address Gorby's Second Assignment of Error. Our disposition of Gorby's First Assignment of Error renders her Second Assignment of Error moot, and we overrule it as moot.

## V. Conclusion

{¶ 30} Gorby's First Assignment of Error having been sustained, and her Second Assignment of Error having been overruled as moot, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

FROELICH, P.J., concurs.

WELBAUM, J., concurring:

{¶ 31} I concur with the majority and write separately only to comment on the important role that evidence of a police officer's past training and experience plays in determining whether objects felt during a pat down are sufficiently "immediately apparent" as contraband. There was a surprising lack of testimony elicited by the State on this subject. The most pertinent, yet insufficient, information was inadvertently elicited on cross examination without any elaboration on redirect.

{¶ 32} It is well established that in ascertaining the required probable cause to satisfy the immediately apparent requirement, a police officer may rely on his or her specialized knowledge, training and experience. *State v. Halczyszak*, 25 Ohio St. 3d 301, 307, 496 N.E.2d 925, 933 (1986). There are numerous cases in which the criminal nature of a plastic baggie with a lumpy or rock-like substance in a defendant's pocket was deemed "immediately apparent" as contraband upon the frisking officer testifying that he felt such objects during a pat down and knew that they were contraband based on his past training and experience. *See State v. Lawson*, 2d Dist. Clark No. 2005 CA 24, 2006-Ohio-4158, ¶ 11-13; *State v. Stewart*, 2d Dist. Montgomery No. 19961, 2004-Ohio-1319, ¶ 22-25; *State v. Olden*, 2d Dist. Montgomery No. 23137, 2010-Ohio-215, ¶ 63 (officer felt and saw part of plastic baggie sticking out of pocket); *State v. Woodgeard*, 5th Dist. Fairfield No. 01CA50, 2002-Ohio-3936, ¶ 48-83; *State v. Taylor*, 5th Dist. Stark No. 1998CA00115, 1999 WL 4136, *4 (Dec. 21, 1998); *but see State v. Williams*, 2d Dist. Montgomery No. 20255, 2004-Ohio-4695, ¶ 59-70 (finding no probable cause under the plain feel doctrine where an officer testified that he felt a hard, bumpy object in defendant's pocket, but no plastic baggie, and that he believed it to be crack cocaine but did not explain why).

{¶ 33} Here, if Deputy Haas had testified that she relied on her past training and experience in identifying the object in Gorby's skirt, that testimony, combined with: (1) Haas's testimony that she recognized it was contraband; (2) the fact that Haas felt a large, lumpy object wrapped in cellophane, which was known by her to be associated with drug activity; and (3) the odd location of the lump on Gorby's person which was from Haas's experience consistent with persons attempting to hide contraband, would have been sufficient to establish probable cause

that the criminal nature of the object was immediately apparent to Haas. *See State v. Williams*, 2d Dist. Montgomery No. 20255, 2004-Ohio-4695 ¶ 65 (whether an officer immediately recognizes an object when it is first felt can be determined with reference to the object's size and its location on the suspect's person).

{¶ 34} If the record had contained information about Deputy Haas's past training and experience with similar pat downs, the trial court may have inferred that Haas's conclusion that the object in Gorby's skirt was contraband was based on her past training and experience. *See State v. Phillips*, 155 Ohio App.3d 149, 2003-Ohio-5742, 799 N.E.2d 653 (2d Dist.) (holding that the state is not required "to offer evidence showing 'why' an officer reached a particular conclusion about the identity of an article that justifies a search and subsequent seizure of the object. It is sufficient that the officer testifies that he reached the conclusion [about the identity of an object] because the identity of the object was immediately apparent to him. Why it was immediately apparent may be inferred from the officer's experiences with similar objects in past situations").

{¶ 35} However, other than the fact that Deputy Haas has "been with the sheriff's office" for nine years and is currently a deputy, there is nothing in the record indicating whether she had ever conducted similar pat downs in the past that yielded contraband. Accordingly, based on the facts and circumstances here, I find nothing in the record that would permit the trial court to infer that Deputy Haas based her conclusion on her past training and experience.

{¶ 36} It is advisable for counsel to question the frisking officer regarding his or her past training and experience with conducting pat downs and to also determine whether the officer relied upon his or her past experience in identifying the object as contraband.

**{¶ 37}** Accordingly, I concur with the majority.

. . . . . . . . . . . . .

Copies mailed to:

Mathias H. Heck
April F. Campbell
Richard L. Kaplan
Hon. Gregory F. Singer