[Cite as *State v. Sellers*, 2014-Ohio-5366.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                    :

    Plaintiff-Appellee           :           C.A. CASE NO.    26121

v.                               :           T.C. NO.    13CR2932

DEMETRIUS T. SELLERS             :           (Criminal appeal from
                                                 Common Pleas Court)

    Defendant-Appellant          :


                                 :

. . . . . . . . . .

## **O P I N I O N**

Rendered on the ____5th____ day of ____December____, 2014.

. . . . . . . . . .

TIFFANY C. ALLEN, Atty. Reg. No. 0089369, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

SCOTT S. DAVIES, Atty. Reg. No. 0077080, 1900 Kettering Tower, 40 N. Main Street, Dayton, Ohio 45423
    Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1}  Defendant-appellant Demetrius T. Sellers appeals his conviction and sentence for one count of carrying a concealed weapon (CCW), in violation of R.C. 2923.12(A)(2), a felony of the fourth degree.  Sellers filed a timely notice of appeal with this Court on March 10, 2014.

{¶ 2}  The incident which forms the basis for the instant appeal occurred on September 16, 2013, at approximately 1:00 p.m., when Sergeant John Riegel and Sergeant Paul Saunders of the Dayton Police Department were responding to complaints of illegal drug sales in the area surrounding Project CURE, a methadone clinic located in the 1700 block of North James H. McGee Blvd.  Sgt. Riegel testified that the area between the 1700 and 1800 blocks of North James H. McGee Blvd is referred to as "the Coast."   The complaints came from the director of Project CURE who informed the police that individuals were selling heroin to patients of the methadone clinic.  Upon arriving at the clinic, Sgt. Riegel observed two men sitting in a Pontiac Grand Am parked across the street.  Sgt. Riegel arrived in an unmarked police vehicle but was wearing the uniform of the day.  When the two men apparently observed Sgt. Riegel, they exited the vehicle and ran.  Sgt. Riegel described the individuals as two black males wearing dark clothing.  Sgt. Riegel testified that the driver of the vehicle was approximately 5'11" tall.  He had short hair and a handgun tucked into his waistband.  The passenger was also approximately 5'11" tall and had medium length braided hair.

{¶ 3}  The two individuals split up as they ran away from the police.  Sgt. Riegel testified that he ran after the driver of the vehicle who was in possession of the gun.  The

driver ran around a nearby apartment complex where he dropped approximately eighty to one-hundred caps of heroin and cocaine. The driver then ran down towards Wolf Creek where Sgt. Riegel lost him. Sgt. Saunders was also unable to apprehend the passenger of the vehicle. The vehicle abandoned by the two men was found to contain a large amount of drugs. For the next hour or so, approximately twenty to thirty officers searched the area where the two men absconded, but neither man was located. Eventually, Sgt. Riegel gave up the search and radioed into dispatch for an officer to come and take him to his unmarked police car which he had left near the clinic.

{¶ 4} Shortly thereafter, Officer John Garrison of the Dayton Police Department arrived in his cruiser and drove Sgt. Riegel back to his vehicle. As they approached the clinic, Sgt. Riegel observed an individual who matched the description of the passenger from the Grand Am who had run away earlier. The passenger, later identified as the defendant-appellant Sellers, was walking towards an intersection on Walton Avenue near the clinic. Sellers was talking on his cell phone when the officers located him. When Sellers observed the police, he turned around and began walking in the other direction. Sgt. Riegel testified that he turned to Officer Garrison and stated "That's him right there." Although Officer Garrison testified that he did not hear Sgt. Riegel say "That's him," he exited the cruiser, stopped Sellers, and immediately patted him down. Sgt. Riegel also exited the cruiser and approached Sellers from behind. Sgt. Riegel testified that he ordered Sellers to stop walking just prior to the beginning of Officer Garrison's pat-down. During the pat-down, Officer Garrison found a .22 caliber revolver in Sellers' right front pants pocket and a bag that contained Xanax pills. Officer Garrison testified that he requested and

received Sellers' consent before searching him. The trial court, however, specifically rejected Officer Garrison's testimony regarding consent. Sellers was subsequently arrested for carrying a concealed weapon and taken to jail.

{¶ 5} On October 24, 2013, Sellers was indicted for one count of CCW. At his arraignment on November 7, 2013, Sellers stood mute, and the trial court entered a plea of not guilty on his behalf. Sellers filed a motion to suppress on November 19, 2013, challenging the legality of the warrantless search of his person. A hearing was held on said motion on January 17, 2014. Sgt. Riegel and Officer Garrison were the only witnesses who testified at the hearing. On January 21, 2014, the trial court overruled Sellers' motion to suppress, articulating its findings of fact and conclusions from the bench. We note that both Officer Garrison and Sgt. Riegel expressed some confusion over which one of them was driving the police cruiser when Sellers was seen walking down Walton Avenue. The trial court ultimately found who was driving to be of only minimal importance in its decision denying Sellers' motion to suppress.

{¶ 6} Sellers subsequently pled no contest to the charged offense, and the trial court sentenced him to a term of community control not to exceed five years.

{¶ 7} It is from this judgment that Sellers now appeals.

{¶ 8} Sellers' sole assignment of error is as follows:

{¶ 9} "THE TRIAL COURT DENIED DEMETRIUS SELLERS' RIGHT TO BE FREE FROM UNREASONABLE SEARCH AND SEIZURE WHEN IT DENIED HIS MOTION TO SUPPRESS ILLEGALLY SEIZED EVIDENCE BECAUSE THERE WAS NO REASONABLE SUSPICION TO STOP MR. SELLERS."

**{¶ 10}** In his sole assignment, Sellers contends that the trial court erred when it overruled his motion to suppress. Specifically, Sellers argues that Sgt. Riegel and Officer Garrison did not possess a reasonable articulable suspicion that he was engaged in criminal activity to justify the initial stop and subsequent pat-down for weapons.

**{¶ 11}** As this Court has previously noted:

Appellate courts give great deference to the factual findings of the trier of facts. (Internal citations omitted) . At a suppression hearing, the trial court serves as the trier of fact, and must judge the credibility of witnesses and the weight of the evidence. (Internal citations omitted). The trial court is in the best position to resolve questions of fact and evaluate witness credibility. (Internal citations omitted). In reviewing a trial court's decision on a motion to suppress, an appellate court accepts the trial court's factual findings, relies on the trial court's ability to assess the credibility of witnesses, and independently determines whether the trial court applied the proper legal standard to the facts as found. (Internal citations omitted). An appellate court is bound to accept the trial court's factual findings as long as they are supported by competent, credible evidence. *State v. Hurt*, Montgomery App. No. 21009, 2006-Ohio-990.

*State v. Purser*, 2d Dist. Greene No. 2006 CA 14, 2007-Ohio-192, ¶ 11.

**{¶ 12}** The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution protect individuals from unreasonable searches and seizures. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Pressly*,

2d Dist. Montgomery No. 24852, 2012-Ohio-4083, ¶ 18. "Under applicable legal standards, the State has the burden of showing the validity of a warrantless search, because warrantless searches are 'per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well delineated exceptions.' " *State v. Hilton*, 2d Dist. Champaign No. 08-CA-18, 2009-Ohio-5744, ¶ 21-22, citing *Xenia v. Wallace*, 37 Ohio St.3d 216, 218, 524 N.E.2d 889 (1988).

{¶ 13} The state bears the burden of proof on the issue of whether probable cause existed for a warrantless search and seizure. *Xenia v. Wallace*, 37 Ohio St.3d 216, 218, 524 N.E.2d 889 (1988). "Probable cause to arrest depends 'upon whether, at the moment the arrest was made *** the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.' " *Adams v. Williams*, 407 U.S. 143, 148, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858 at ¶66, citing *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). See, also, *State v. Jordan*, 2d Dist. Montgomery No. 18600, 2001 WL 1245083 (Oct. 19, 2001). The existence of probable cause is determined by looking at the totality of the circumstances. See *Illinois v. Gates*, 462 U.S. 213, 230-32, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A reviewing court "must give due weight to [the officer's] experience and training and view the evidence as it would be understood by those in law enforcement." *State v. Andrews*, 57 Ohio St.3d 86, 88, 565 N.E.2d 1271 (1991).

{¶ 14} In the instant case, several facts in particular must be considered. First and

foremost, upon observing Sellers walking down Walton Avenue, Sgt. Riegel immediately recognized Sellers as the passenger in the vehicle who fled from him just one hour earlier in the same vicinity. Sgt. Riegel testified that he concluded Sellers was the same individual based on his height, weight, hair [medium length braids], and complexion. Tr. 11. A second factor supporting Sgt. Riegel's reasonable suspicion that Sellers was engaged in criminal activity was that he fled with the driver of the vehicle who was observed with a gun in his waistband. Furthermore during his flight from the police, the driver of the vehicle also dropped eighty to one-hundred capsules of heroin or cocaine. Upon searching the vehicle that the two men abandoned, the police discovered a large amount of drugs.

{¶ 15} Another fact is Sellers' change of direction after he saw the police cruiser. Officer Garrison testified that as soon as their police cruiser approached, Sellers immediately turned around and began walking in the other direction down Walton Avenue. *Compare State v. Chadwell*, 182 Ohio App.3d 256, 2009-Ohio-1630, 912 N.E.2d 618, ¶ 26 (2d Dist.) (saying that "'[u]nprovoked flight upon seeing police officers is a relevant consideration in determining whether the totality of the facts and circumstances are sufficiently suspicious to justify a *Terry* stop,'" quoting *State v. Jordan*, 2d Dist. Clark No. 05CA04, 2006-Ohio-1813, ¶ 22, citing *Illinois v. Wardlow*, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)). "'While such [behavior] is not necessarily indicative of criminal behavior, and can be consistent with innocent conduct, *Terry* recognized that officers may briefly detain individuals to resolve ambiguity in their conduct.'" *Id.*, quoting *Jordan* at ¶ 22, citing *Wardlow*. Sgt. Riegel testified that he believed that Sellers changed his direction upon observing the police officers in an effort to hide his face. *Compare State v. Agee*, 8th Dist.

Cuyahoga No. 94035, 2010-Ohio-5074, ¶ 23 (saying that "'nervous, evasive behavior' constitutes a 'pertinent factor' in determining the existence of reasonable suspicion," quoting *State v. Davis*, 8th Dist. Cuyahoga No. 89530, 2008-Ohio-322, ¶ 12).

{¶ 16} Additionally, Sgt. Riegel testified that prior to Sellers' arrest, there had been numerous complaints from the director of Project CURE regarding individuals selling heroin outside the methadone clinic located in the 1700 block of North James H. McGee Blvd, an area also known as "the Coast." Clearly, the area had a reputation for drug activity. *Compare State v. Andrews*, 57 Ohio St.3d 86, 88, 565 N.E.2d 1271 (1991) (saying that "[a]n area's reputation for criminal activity is an articulable fact which is a part of the totality of circumstances surrounding a stop to investigate suspicious behavior"). The preceding factors combine to create a reasonable suspicion that Sellers had committed or was committing an offense. Therefore, Sgt. Riegel's initial decision to stop Sellers was lawful.

{¶ 17} Additionally, Officer Garrison's frisk was lawful. "Authority to conduct a patdown search for weapons does not automatically flow from a lawful stop." *State v. Stewart*, 2d Dist. Montgomery No. 19961, 2004-Ohio-1319, ¶ 16. An officer may search a lawfully stopped suspect for weapons "if the officer reasonably believes the suspect may be armed." *State v. Montague*, 2d Dist. Montgomery No. 25160, 2013-Ohio-811, ¶ 13, citing *State v. Evans*, 67 Ohio St.3d 405, 408, 618 N.E.2d 162 (1993). It is usually reasonable for an officer to believe that a person suspected of committing a drug crime is armed. *State v. Martin*, 2d Dist. Montgomery No. 20270, 2004-Ohio-2738, ¶ 17 ("Ohio courts have long recognized that persons who engage in illegal drug activities are often armed with a weapon. 'The right to frisk is virtually automatic when individuals are suspected of committing a

crime, like drug trafficking, for which they are likely to be armed.'"), quoting *Evans* at 413.

{¶ 18}  Sellers argues that Officer Garrison's decision to conduct a pat down was not justified because he was not personally aware that Sgt. Riegel had recognized Sellers as a fleeing suspect engaged in drug activity.  In support of his argument, Sellers relies on the following testimony of Officer Garrison:

> The State: Okay.  And did that cause you any concern when you were approaching Mr. Sellers after Sgt. Riegel identified him?

> Officer Garrison: Not above normal because I didn't realize at that point, when I approached [Sellers], that Sergeant thought that was the guy from earlier.

Tr. 30, lines 16-20.

{¶ 19}  Although not discussed by the trial court, we note that whether probable cause exists must be determined by examining the collective knowledge of the police. *United States v. Barraza*, 492 F.Supp.2d 816 (S.D.Ohio 2005); *Thacker v. City of Columbus*, 328 F.3d 244, 256 (6th Cir.2003).  Moreover, the determination of probable cause requires an examination of the objective reasonableness of the facts with the officers' subjective intentions being irrelevant. *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).  Here, Officer Garrison was acting on an order from Sgt. Riegel, a senior officer, to stop and frisk an individual that the Sergeant concluded was a fleeing suspect complicit in drug activity.  Regarding the stop and frisk, Sgt. Riegel's knowledge supporting his reasonable articulable suspicion that Sellers was the passenger who had earlier fled from him may reasonably be imputed to Officer Garrison.  It is well-established

that when an order to stop or arrest a suspect is communicated to officers in the field, the underlying facts constituting probable cause need not be communicated, so long as the individual or agency issuing the order can justify the intrusion on Fourth Amendment rights. *See United States v. Hensley*, 469 U.S. 221, 231, 105 S.Ct. 675, 681, 83 L.Ed.2d 604 (1985).

{¶ 20} We also note that although he was not initially involved in the chase of the two fleeing suspects, Officer Garrison testified that he was generally aware of the facts surrounding Sgt. Riegel's earlier involvement with the two fleeing individuals suspected of drug activity. He was aware that a gun and drugs were involved. Officer Garrison testified that he has been a police officer with the City of Dayton for nine years, and based on his training and experience, Sellers was acting in a manner consistent with someone engaged in illegal drug activity. Officer Garrison further testified that "drugs and firearms go together." Accordingly, Officer Garrison's decision to immediately frisk Sellers was lawful insofar as it was based on his own personal training and experience, as well as the objectively reasonable suspicion of Sgt. Riegel that Sellers was the passenger who had earlier fled from him. In this instance, the totality of the circumstances surrounding the stop and frisk of Sellers support the trial court's decision overruling his motion to suppress.

{¶ 21} Sellers' sole assignment of error is overruled.

{¶ 22} Sellers' sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FROELICH, P.J. and WELBAUM, J., concur.

Copies mailed to:

Tiffany C. Allen
Scott S. Davies
Hon. Mary Katherine Huffman