[Cite as *State v. Anderson*, 2016-Ohio-7269.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 15AP-924 |
| v. | : | (C.P.C. No. 14CR-3263) |
| Aaron M. Anderson, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on October 11, 2016

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee. **Argued:** *Barbara A. Farnbacher*.

**On brief:** *Yeura R. Venters*, Public Defender, and *Timothy E. Pierce*, for appellant. **Argued:** *Timothy E. Pierce*.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, Aaron M. Anderson, appeals from a judgment of conviction entered by the Franklin County Court of Common Pleas. For the following reasons, we affirm that judgment.

## I. Factual and Procedural Background

{¶ 2} On June 20, 2014, a Franklin County Grand Jury indicted appellant with counts of carrying a concealed weapon in violation of R.C. 2923.12 and having a weapon while under disability in violation of R.C. 2923.13. The charges arose when police found

appellant outside of a house with a gun. After entering a not guilty plea, appellant filed a motion to suppress the gun police found on him because the police did not have reasonable suspicion to stop or search him. The trial court held a hearing on appellant's motion at which the arresting officer testified to the events that occurred that day.

{¶ 3} The officer, Matthew Lease, testified that on the evening of June 1, 2014, he and another officer were dispatched to a house on Baughman Avenue for what he described as a "stabbing slash domestic violence call." (Nov. 16, 2015 Mot. Hearing at 9.) Officer Lease testified that the dispatch indicated the presence of a knife and a taser and that a son and friends were involved. *Id.* at 9, 27. The dispatch described the son as a white male, skinny with tattoos, wearing a blue shirt and shorts. *Id.* at 31. Upon the officers' arrival at the house, Officer Lease saw a white male at the back of a pickup truck parked in the front of the house. The other officer approached that man. Officer Lease, however, then saw a black male leave the house's porch and walk towards the officers. The black male, later identified as appellant, stopped and turned around when he saw the officers and started to walk in the opposite direction. *Id.* at 10. Officer Lease thought that appellant could be involved with the domestic violence call, so he got out of his car and ordered appellant to come towards him, which he did. *Id.* at 11-12, 47. As the two met at the front of the police car, a woman whose finger was cut and bleeding came out of the house pointing "in a frantic manner" that "it's him, it's him, it's him." *Id.* at 12. Officer Lease did not know which man the woman was pointing to, so he physically detained appellant and was going to search him for weapons. Before doing so, Officer Lease asked appellant if he had any weapons. Appellant told the officer that he had a gun in his pocket. *Id.* at 41.

{¶ 4} Appellant called a resident of the house on Baughman Avenue to describe what happened that night. The resident, Arthur Wilhoit, was on the porch for the entire incident. He testified that appellant walked past the house some 10 to 15 minutes after the police arrived and that the officers just grabbed him and put him into a police cruiser. He did not know appellant and never saw him on the porch that night. *Id.* at 62-63.

{¶ 5} The trial court denied appellant's motion, concluding that in light of the totality of the circumstances testified to by the officer, he had reasonable suspicion that appellant was or may have engaged in criminal activity. As a result of that decision,

appellant withdrew his not guilty plea and entered a no contest plea to both counts of the indictment. The trial court accepted his plea, found him guilty, and sentenced him accordingly.

## II. Appellant's Appeal

{¶ 6} Appellant appeals[1] and assigns the following assignments of error:

> [1.] Because the Appellant had been detained and searched unlawfully the lower court erred in overruling his motion to suppress evidence. All evidence obtained as a result thereof should have been excluded pursuant to the Fourth and Fourteenth Amendments of the United States Constitution and Article I, Section 14 of the Ohio Constitution.

> [2.] The trial court erred in applying the incorrect legal standard in upholding the *Terry* pat-down in this case.

### A. Standard of Review

{¶ 7} Appellant appeals the trial court's denial of his motion to suppress. " 'Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.' " (Citations omitted.) *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100, quoting *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. Where, as here, a trial court does not make findings of fact, we examine the record to determine whether there is sufficient evidence to support the trial court's decision. *State v. Harrison*, 3d Dist. No. 8-14-16, 2015-Ohio-1419, ¶ 19 (trial court failed to make specific factual findings other than relying on officer's testimony); *State v. Jones*, 1st Dist. No. C-130359, 2014-Ohio-3110, ¶ 10; *State v. Azcona*, 4th Dist. No. 97 CA 21 (Mar. 6, 1998), citing *State v. Brown*, 64 Ohio St.3d 476, 482 (1992).

---

[1] We deny the state's motion to dismiss this appeal.

### B. Warrantless Investigative Stops

{¶ 8} The Fourth Amendment to the United States Constitution, as well as Ohio Constitution, Article I, Section 14, protects individuals from unreasonable searches and seizures. *State v. Kinney*, 83 Ohio St.3d 85, 87 (1998); *Katz v. United States*, 389 U.S. 347, 351 (1967). The touchstone of Fourth Amendment analysis is reasonableness, *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977), which depends on the facts and circumstances of each case and a balance of competing interests of the public and the individual. *Terry v. Ohio*, 392 U.S. 1, 29 (1968). Searches and seizures conducted without a warrant are per se unreasonable unless they come within one of the few specifically established and well-delineated exceptions. *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993), citing *Thompson v. Louisiana*, 469 U.S. 17, 20 (1984).

{¶ 9} An investigative stop by a police officer is one of the common exceptions to the Fourth Amendment warrant requirement. *Terry* at 20-22. Under *Terry*, a police officer may constitutionally stop or detain an individual without probable cause when the officer has reasonable suspicion, based on specific, articulable facts, that criminal activity is afoot. *Id.* at 21; *State v. Latson*, 10th Dist. No. 09AP-1212, 2010-Ohio-6297, ¶ 12. Accordingly, "[a]n investigative stop does not violate the Fourth Amendment to the United States Constitution if the police have reasonable suspicion that 'the person stopped is, or is about to be, engaged in criminal activity.' " *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, ¶ 35, quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981). "Reasonable suspicion entails some minimal level of objective justification, 'that is, something more than an inchoate and unparticularized suspicion or "hunch," but less than the level of suspicion required for probable cause.' " *State v. Jones*, 188 Ohio App.3d 628, 2010-Ohio-2854, ¶ 17 (10th Dist.), quoting *State v. Jones*, 70 Ohio App.3d 554, 556-57 (2d Dist.1990).

{¶ 10} The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances. *Jordan* at ¶ 52, quoting *State v. Bobo*, 37 Ohio St.3d 177 (1988), paragraph one of the syllabus. "[T]he circumstances surrounding the stop must 'be viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.' " *Bobo* at 179; *State v. Michael*, 10th Dist. No. 12AP-508, 2013-Ohio-3889, ¶ 12.

{¶ 11} An officer does not have authority to automatically conduct a search of a suspect when a valid *Terry* stop has been initiated. *Akron v. Bowen*, 9th Dist. No. 21242, 2003-Ohio-830, ¶ 9; *State v. Spain*, 10th Dist. No. 10AP-319, 2011-Ohio-322, ¶ 18. After an officer makes a lawful *Terry* stop, the officer may conduct a "pat down" of the person, a limited protective search for weapons, if the officer has a reasonable suspicion that the suspect might be armed and dangerous. *State v. Evans*, 67 Ohio St.3d 405, 407 (1993); *Terry* at 27; *State v. Moorer*, 10th Dist. No. 14AP-224, 2014-Ohio-4776 ("In order to conduct a pat-down search for weapons, an officer must have reason to believe that an individual is armed and dangerous.").

{¶ 12} Having set forth the applicable law, we can now address appellant's assignments of error. For clarity, we do so in reverse order.

### C. Appellant's Second Assignment of Error—Did the Trial Court Properly Analyze the Motion to Suppress?

{¶ 13} In this assignment of error, appellant contends the trial court failed to separately analyze the validity of the initial stop and the subsequent pat-down search. We disagree.

{¶ 14} The trial court concluded that Officer Lease had reasonable suspicion that appellant was or may have engaged in criminal activity. That finding supports the officer's decision to conduct a *Terry* stop. As noted, however, to further engage in a pat-down search, the officer must have reasonable suspicion that the suspect was armed and dangerous. Although the trial court did not expressly make this finding, it did note in its analysis that:

> the officer was told by the dispatch that this was a domestic violence call, involving a knife, in which someone was cut and a taser was present. Also at the time he [Officer Lease] is talking with the defendant a female on the porch is pointing in his and the defendant's general direction saying that is him.

(June 2, 2015 Entry at 3.) In the very next sentence, the trial court concluded "[t]herefore[,] it was proper then for Officer Lease to conduct a pat down." *Id.* at 4. We interpret this portion of the trial court's decision as its' separate determination that the officer had reasonable suspicion that appellant was armed and dangerous in order to

justify the pat-down search. Accordingly, the trial court properly analyzed the motion, and we overrule appellant's second assignment of error.

### D. Appellant's First Assignment of Error—Did the Trial Court Properly Deny the Motion to Suppress?

{¶ 15} Appellant contends in his first assignment of error that the trial court erred by denying his motion to suppress. He argues both that Officer Lease did not have reasonable, articulable suspicion that he was engaged in criminal activity to support the *Terry* stop and that he did not have a reasonable belief that he might be armed in order to conduct a pat-down search. Specifically, appellant argues that the officer could not have a reasonable suspicion that he was involved in criminal activity because he did not match the description of the suspect alleged to have committed the offense. Additionally, the fact that he exited the house's porch and then walked away from the police should not suggest that he had been engaged in criminal activity. He also minimizes the effect of the comments the victim made when she came out of the house screaming "it's him, it's him, it's him," because her comments did not clearly identify appellant and because he did not match the description of the suspect. Last, he argues that the officer could not have thought he had any weapons because there were no suspicious bulges or outlines of weapons under his clothes. We are not persuaded by appellant's arguments.

{¶ 16} Officer Lease testified that he was dispatched to the scene of a domestic violence situation involving the victim, her son, and friends. When he arrived at the house, he observed a white male who matched the description of the son. He then saw appellant exit the house's porch and walk towards him, only to turn around and walk the other way when he saw the police. Officer Lease testified that as appellant walked away, he was turning his head "house to house" looking "for a good place to run." (Mot. Hearing at 15.) Turning and walking away upon seeing a police officer, or other nervous and evasive behavior, can be considered by an officer in the reasonable suspicion determination. *State v. Sellers*, 2d Dist. No. 26121, 2014-Ohio-5366, ¶ 15 (suspect's change of direction upon seeing police car is a fact to be considered in reasonable suspicion determination); *State v. Bradford*, 10th Dist. No. 14AP-322, 2014-Ohio-5527, ¶ 31-32; *State v. Moyer*, 10th Dist. No. 09AP-434, 2009-Ohio-6777, ¶ 22; *State v. Burnett*, 10th Dist. No. 02AP-863, 2003-Ohio-1787, ¶ 12. Last, the victim of the offense

came out of the house, pointed in appellant's general direction, and stated "in a frantic manner" that "it's him, it's him, it's him."  Although she did not expressly identify appellant, and Officer Lease did not know who she was pointing at, Officer Lease could not exclude appellant's involvement because he thought that individuals other than the son might have been involved in the domestic violence because the dispatch referred to the son and his friends.

{¶ 17} In light of the totality of the circumstances known by Officer Lease, specifically, the content of the dispatch, appellant's presence on the porch, his conduct after he left the porch, and the victim's actions and statements, we conclude that the officer had reasonable suspicion to believe that appellant was engaged in criminal activity. The fact that appellant did not match the description of the suspect does not negate the officer's reasonable suspicion that appellant could be involved because Officer Lease believed that individuals other than the son may have been involved in the domestic violence.  Accordingly, the trial court did not err by concluding that the *Terry* stop was valid.

{¶ 18} Officer Lease also had reasonable suspicion to believe that appellant could be armed.  Officer Lease learned in the dispatch that two weapons, a knife and a taser, were involved.  This information is sufficient for him to reasonably believe that an individual at the scene under these circumstances could be armed.  *See State v. Carter*, 12th Dist. No. CA2002-02-012, 2002-Ohio-6108, ¶ 16 (officer may rely on information acquired through radio dispatch to form reasonable suspicion); *State v. Pickens*, 5th Dist. No. 11CAA090085, 2012-Ohio-2901, ¶ 52 (dispatch provided officer with sufficient facts to conduct traffic stop).  The fact that he saw no bulges or outlines of a weapon in appellant's clothes is not relevant to whether Officer Lease could conclude that appellant might be armed.  The trial court did not err by concluding that Officer Lease had reasonable suspicion that appellant was armed in order to justify the pat-down search.

{¶ 19} Last, appellant also argues that the trial court erred in relying on Officer Lease's testimony because it was not credible.  Most significantly, appellant points out that the dispatch notes from this incident indicate that the victim reported that her son bit and choked her.  The notes did not mention the presence of others at the scene. Officer Lease, however, testified that the dispatch he heard indicated the presence of the son's

friends.  (Mot. Hearing at 32.)  Appellant also notes other discrepancies between Lease's testimony and what he wrote in his police report regarding the incident.

{¶ 20}  The trial court did not expressly determine the credibility of Officer Lease's testimony.  Thus, we have no reason to believe the trial court determined his testimony was not credible.  *State v. Swonger*, 10th Dist. No. 09AP-1166, 2010-Ohio-4995, ¶ 19.  Although there were discrepancies between the officer's testimony and other evidence, those discrepancies do not render his testimony not credible as a matter of law such that the trial court could not rely on it in its analysis.  *See State v. Thompson*, 10th Dist. No. 08AP-22, 2008-Ohio-4551, ¶ 20; *State v. Sims*, 10th Dist. No. 14AP-1025, 2016-Ohio-4763, ¶ 19 (inconsistencies in testimony does not render testimony not credible as a matter of law).  Thus, we reject appellant's argument challenging the credibility of the officer's testimony.

{¶ 21}  For all of these reasons, the trial court did not err when it denied appellant's motion to suppress.  Accordingly, we overrule appellant's first assignment of error.

### III.  Conclusion

{¶ 22}  Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and SADLER, JJ., concur.

————————————