[Cite as *State v. Hairston*, 2017-Ohio-7612.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 16AP-294 |
| v. | : | (C.P.C. No. 15CR-3377) |
| Jaonte D. Hairston, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 14, 2017

**On brief:** *Ron O'Brien,* Prosecuting Attorney, and *Sheryl L. Prichard,* for appellee. **Argued:** *Sheryl L. Prichard.*

**On brief:** *Yeura R. Venters,* Public Defender, and *John W. Keeling*, for appellant. **Argued:** *John W. Keeling.*

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Jaonte D. Hairston appeals from the decision of the Franklin County Court of Common Pleas overruling his motion to suppress. For the reasons set forth below, we reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} Hairston was indicted on one fourth-degree felony count of carrying a concealed weapon, in violation of R.C. 2923.12, for an offense alleged to have occurred on or about March 29, 2015. (July 10, 2015 Indictment.) Hairston filed a motion to suppress the evidence and statements that the state intended to introduce as evidence to prove its case, alleging that they were the fruits of an unconstitutional search and seizure. (Dec. 22, 2015 Mot.)

{¶ 3}   The trial court held an evidentiary hearing on the motion on February 8, 2016. At the hearing, the state called Officer Samuel Moore as its sole witness. (Feb. 6, 2016 Tr. at 3-4.) Officer Moore testified that while on patrol on March 29, 2015, he responded to a call concerning a domestic dispute at approximately 9:00 p.m. (Tr. at 5-6.) When he and his partner exited the patrol vehicle at the address of the dispute, Officer Moore heard four or five gunshots coming from the west, in the direction of a nearby elementary school. (Tr. at 7.) Drug activity, thefts, assaults, and crimes involving guns had occurred in the neighborhood and near the elementary school and a neighboring high school, and Officer Moore had personally made arrests for such offenses. (Tr. at 8-9.) After hearing the gunshots, he and his partner returned to the car and drove in the direction of the elementary school, four-tenths of a mile away, where they arrived "no more than 30, 60 seconds" later. (Tr. at 9, 16, & 29.)

{¶ 4}   As they were approaching the school, Officer Moore saw Hairston walking east, away from the school, across a crosswalk, talking on a cell phone. (Tr. at 9 & 24.) At this time, it was dark out and no other people were around. (Tr. at 15.) Officer Moore and his partner exited their vehicle with their guns drawn and ordered Hairston to stop. (Tr. at 24.) They asked Hairston if he had had heard gunshots and he replied that he had heard gunshots coming from the west. (Tr. at 11.) Officer Moore asked Hairston whether he had any weapons on his person, and instructed him to place his hands behind his back in order to perform a pat-down. (Tr. at 25.) Hairston replied that he had a gun and "nodded towards his left jacket pocket," where Officer Moore found a semiautomatic pistol. (Tr. at 9-10.) Officer Moore described Hairston's demeanor as "a little nervous," but stated that Hairston was "compliant" and "calmly" answered the officers' questions. (Tr. at 17.)

{¶ 5}   After Officer Moore's testimony, the trial court heard the attorneys' arguments and overruled Hairston's motion. Ruling from the bench, the trial court found that the officers:

> [P]ersonally heard [the gun shots] and went in that direction, and the officer said it only took them a minute or so to get there. And you asked him if he had a hunch, and he said yeah. Well, he did have a hunch, but that doesn't necessarily mean that he didn't have a little more than a hunch when he only saw one person in the area and didn't see any other cars. All he has to have is a reasonable suspicion to question the

suspect, and that's what he did, and that led to the discovery of the firearm.

So I think it's a close call because, you know, what's a reasonable suspicion probably varies from one individual to the next. But with all the facts that were testified to by the officer, I think that they had enough to do a *Terry*[*v. Ohio*, 392 U.S. 1 (1968)] stop. So I'll deny the motion.

(Tr. at 44.)

{¶ 6} After the trial court overruled the motion to suppress, Hairston entered a plea of no contest. (Mar. 18, 2016 Entry.) The trial court imposed a suspended prison term of six months. (Mar. 22, 2016 Jgmt. Entry.)

{¶ 7} Hairston now appeals and asserts the following assignment of error:

THE TRIAL COURT ERRED WHEN IT OVERRULED THE DEFENDANT'S MOTION TO SUPPRESS THE EVIDENCE OBTAINED FOLLOWING THE UNLAWFUL SEIZURE OF THE DEFENDANT, AT GUNPOINT, MADE WITHOUT ANY ARTICULABLE SUSPICION TO BELIEVE THAT HE HAD COMMITTED ANY OFFENSE.

## II. STANDARD OF REVIEW

{¶ 8} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. This court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997). Thus, " '[d]eterminations of reasonable suspicion and probable cause should be reviewed de novo on appeal.' " *Columbus v. Ellyson*, 10th Dist. No. 05AP-573, 2006-Ohio-2075, ¶ 4, quoting *Ornelas v. United States*, 517 U.S. 690, 699 (1996).

## III. ANALYSIS

{¶ 9} "The Fourth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment, as well as Ohio Constitution, Article I, Section 14, prohibit the government from conducting warrantless searches and seizures, rendering them per se unreasonable unless an exception applies." *State v. Goodloe*, 10th

Dist. No. 13AP-141, 2013-Ohio-4934, ¶ 6, citing *State v. Mendoza*, 10th Dist. No. 08AP-645, 2009-Ohio-1182, ¶ 11, citing *Katz v. United States*, 389 U.S. 347, 357 (1967). One exception is an investigatory stop, commonly referred to as a *Terry* stop, under which "a police officer may stop or detain an individual without probable cause when the officer has reasonable suspicion, based on specific, articulable facts, that criminal activity is afoot." *State v. Jones*, 188 Ohio App.3d 628, 2010-Ohio-2854, ¶ 16 (10th Dist.), citing *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968).

{¶ 10} Under *Terry*, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the warrantless seizure of the defendant. *Terry* at 21. "The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." *State v. Freeman*, 64 Ohio St.2d 291, 293 (1980), paragraph one of the syllabus. Furthermore, *Terry* requires that "the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief" that the action taken was appropriate?" *Terry* at 21-22, quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925). Under this standard, "the totality of the circumstances -- the whole picture" must demonstrate "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981). "At a hearing on a motion to suppress, the state bears the burden of proving that a warrantless search or seizure meets Fourth Amendment standards of reasonableness." *State v. Williams*, 10th Dist. No. 02AP-730, 2003-Ohio-5204, ¶ 35.

{¶ 11} Hairston argues that his seizure was not authorized under *Terry* because the officers stopped him on no more than a hunch, without any particularized suspicion of criminal activity. (Appellant's Brief at 9-27.) Furthermore, Hairston argues that stopping him at gunpoint constituted an elevated infringement of his liberty interests that required a "higher degree of suspicion" than existed under the circumstances. (Appellant's Brief at 32.)

{¶ 12} In response, the state argues that even apart from the officer's hunch that Hairston fired the shots, the totality of the circumstances demonstrated reasonable suspicion. The state points to "the proximity of the shots, timing and absence of anyone

else in the area," the location in an area of known crime, the time the shots were fired, and Hairston's apparent nervousness at the scene. (Appellee's Brief at 8-9.) The state also argues that stopping Hairston at gunpoint was a reasonable display of force, given that the officers had just heard gunshots. (Appellee's Brief at 9-15.)

{¶ 13} Applying that objective standard required under *Terry* to the totality of the facts and circumstances in the record, we conclude that no reasonable suspicion justified the stop.[1] The only fact in the record from which the officers could infer that criminal activity was afoot was that they heard gunshots from somewhere to the west. Based on that fact, it was reasonable to infer that someone, somewhere, had shot a gun. But this general fact was insufficient to provide an "objective basis for suspecting the *particular person* stopped." (Emphasis added.) *Cortez* at 417-18. Hairston was simply the first person the officers saw after driving nearly one-half mile from where they stood when they heard the gunshots. *See State v. Stewart*, 193 Ohio App.3d 716, 2011-Ohio-2910 ¶ 15 (8th Dist.) (stating that police officers' "need to act out of concern for their own safety" after a report of gunshots "did not legitimize the indiscriminate stop and frisk of the first couple that they saw walking through a parking lot"). No reasonable suspicion exists where there is an absence of any particularized connection between the only fact suggesting criminal activity and the particular person seized for a *Terry* stop. *See, e.g., United States v. Baldwin*, 114 Fed.Appx. 675, 680 (6th Cir.2004) (affirming decision to sustain a motion to suppress where, after hearing gunshots and seeing a "fleeing individual," officers seized a defendant sitting in a parked car, as there had been "no showing of any specific, articulable facts which gave rise to a reasonable suspicion that [the driver] was connected to the firing of the gunshots").

{¶ 14} Furthermore, Hairston's actions immediately before the officers stopped him demonstrated no grounds for suspecting him of committing any criminal act. We have previously observed that "[r]easonable suspicion that an individual was involved in a shooting exists when he is seen in the area where the incident recently occurred, and he is

---

[1] It is not clear that the trial court applied this standard when, while ruling on the motion to suppress, it stated: "what's a reasonable suspicion probably varies from one individual to the next." (Feb. 6, 2016 Tr. at 44.) Because reasonable suspicion asks whether a *reasonable* person would conclude, based on "the facts available to the officer at the moment," that the defendant had engaged in or was about to engage in criminal activity, it is an objective standard that should not vary from one individual to the next. *Terry* at 21-22.

fleeing." *State v. Hodge*, 10th Dist. No. 11AP-1099, 2012-Ohio-4306, ¶ 11. Such is not the case here. Hairston was simply crossing the street and speaking to someone on a cell phone when the officers came on him. Although the state emphasizes that Hairston appeared somewhat nervous, this was not accompanied by the "evasive behavior" or "furtive movements" that typically accompany nervousness when cited as a factor contributing to reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); *United States v. Caruthers*, 458 F.3d 459, 466 (6th Cir.2006). *See also State v. Anderson*, 10th Dist. No. 15AP-924, 2016-Ohio-7269, ¶ 16 ("Turning and walking away upon seeing a police officer, or other nervous and evasive behavior, can be considered by an officer in the reasonable suspicion determination"). Given that "some degree of nervousness during interactions with the police is not uncommon" and, in this case, the officers stopped Hairston with their weapons drawn, this factor contributes little, if anything to the reasonable suspicion inquiry. *State v. Broughton*, 10th Dist. No. 11AP-620, 2012-Ohio-2526, ¶ 23.

{¶ 15} The contextual factors cited by the state give no additional support to its argument that reasonable suspicion justified the *Terry* stop. An individual's mere presence in an area of high crime does not "justify an investigative stop" without additional factors that demonstrate a particularized reason to suspect the individual of criminal activity. *State v. Carter*, 69 Ohio St.3d 57, 65 (1994), citing *Brown v. Texas*, 443 U.S. 47, 52 (1979). *See also United States v. Young*, 707 F.3d 598, 603 (6th Cir.2012) (noting that "contextual factors, such as high-crime [areas], should not be given too much weight because they raise concerns of racial, ethnic, and socioeconomic profiling" which in this jurist's opinion is un-American.). Furthermore, the state introduced no evidence to explain how the timing of the stop, shortly after nine o'clock in the evening, or the mere fact that it was dark, were indicative of criminal activity. *United States v. Uribe*, 709 F.3d 646, 650 (7th Cir.2013) (discounting assertion that two a.m. timing of traffic stop contributed to reasonable suspicion where the "government did not present any evidence of [the officer's] experience and expertise or of any officer's belief that the context of the stop made its timing suspicious"). At any rate, without a particularized, objective basis for suspecting that Hairston had engaged in criminal activity, such contextual factors cannot create reasonable suspicion. *See United States v. Johnson*, 620 F.3d 685 (6th Cir.2010)

(reversing denial of motion to suppress where the defendant exhibited no suspicious behavior "the totality of the relevant circumstances consisted of contextual factors that would have applied to anyone in the neighborhood"). For the foregoing reasons, the circumstances, considered in their totality, fail to demonstrate the existence of "a particularized and objective basis" for stopping Hairston. *Cortez* at 417-18.

{¶ 16} The state argues that the facts of this case are similar to *State v. Pinckney*, 10th Dist. No. 14AP-709, 2015-Ohio-3899, in which we reversed a trial court's decision overruling a defendant's motion to suppress. In that case, officers responded to a report that multiple shots had been fired at an apartment complex. *Id.* at ¶ 3 & 6. The officers parked in multiple locations within several blocks of the apartment and converged on it on foot from different directions. *Id.* at ¶ 4. As they approached, they heard seven more shots that were so close that the officers "could tell almost exactly where they were coming from." *Id.* at ¶ 5. The officers circled the building with a clear view of the only way in and out of the parking lot. When they arrived in the parking lot, one individual in a vehicle began to start it and drive away, and no one else was around. *Id.* at ¶ 6. As the officers approached the vehicle with their weapons drawn, they made multiple commands to the driver to stop. He did not initially comply, and they had to tell him "over and over again" to stop before he did. *Id.* at ¶ 7. After exiting the vehicle, he told the officers that he had just seen the two shooters running away to the north, yet the officers had just come from that direction. Without being asked, he stated that there was no gun in the vehicle. *Id.* at ¶ 8. At that time, the officers patted the driver down before searching his vehicle, where they found a weapon in the glove compartment. *Id.* at ¶ 9. We held that these circumstances amounted to reasonable suspicion to justify the stop. *Id.* at ¶ 24.

{¶ 17} *Pinckney* does not support the state's argument. The tip in *Pinckney* identified a specific location where shots had been fired—an apartment complex. As the officers approached the apartments, they personally heard more shots from only "200 feet" away and "could tell almost exactly where they were coming from." *Id.* at ¶ 5. Here, in contrast, Officer Moore heard shots that "sounded as though they were coming from the west near the elementary" school, four-tenths of one mile away, a large area that also encompassed a high school, fields, and parking lots. (Tr. at 7, 9, & 16.) Based on personal observation as they approached the apartments and the parking lot from multiple

directions, the officers in *Pinckney* knew that no one else had left the area where the shots were fired other than the particular driver that tried was trying to leave when they arrived. Officer Moore and his partner did not have any such assurance that Hairston was the only possible suspect, as the area in question was much larger and not subject to surveillance. Furthermore, the driver in *Pinckney* initially failed to comply with the officer's requests, dubiously claimed that he had seen the shooters go in the direction the officers had just come from, and, without being asked, asserted that he had no gun. Hairston displayed no comparable behavior that was cause for concern. He was walking and talking on a cell phone when stopped by Officer Moore and his partner. Hairston talked "calmly" and was "compliant," and Officer Moore stated that he "didn't blame" Hairston for appearing "somewhat nervous" when confronted by two officers with their weapons drawn. (Tr. at 17 & 32.) In short, the facts and circumstances of *Pinckney* that provided a particularized, objective basis for reasonable suspicion were not present when Officer Moore and his partner stopped Hairston.

{¶ 18} For the foregoing reasons, we conclude that Hairston's seizure lacked the reasonable suspicion required by *Terry*. The trial court therefore erred when it overruled Hairston's motion to suppress, and his assignment of error is sustained. Accordingly, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.

*Judgment reversed;*
*cause remanded.*

BROWN and LUPER SCHUSTER, JJ., concur.

————————————